THE CITY OF NEW YORK, Plaintiff,

v.

CYCO.NET, INC., Richard A. Urrea, Daniel R. Urrea, Hemi Group, LLC, Kai Gachupin, Dirtcheapcigs.com, Inc., Fred Teutenberg IV, Fred Teutenberg V, Michael E. Smith, d/b/a PaylessCigs, Hooray's Inc., Stephen F. Knopp, Dmitriy Zilberman, S4L Distributing, Inc., William C. Baker III, Double B Distributing, d/b/a Discount Tobacco Store, William J. Bevins, Jr., Defendants.

No. 03 CV 383 DAB.

United States District Court, S.D. New York.

Jan. 27, 2005.

530

Eric Proshansky, Corporation Counsel of the City of New York, New York City, for Plaintiff.

Toby Michael John Butterfield, Cowan, Debaets, Abrahams, New York City, Frederick W. Adkins, H. Patrick Cline, Jr., Cline, Adkins & Cline, Norton, VA, for Defendants.

## OPINION

BATTS, District Judge.

Plaintiff City of New York (the "City") has brought this action against Defendants, alleging violations of civil Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1961, et seq., New York General Business Law § 349 and common law fraud.[1] Plaintiff seeks compensatory damages and injunctive relief, in the form of an end to Defendants' allegedly fraudulent and illegal activities, and attorney's fees. The various Defendants, as explained below, move to dismiss the claims for failure to plead fraud with particularity, for lack of personal jurisdiction, for improper venue, pursu-

---

1. The Court notes that the Plaintiff City has filed three similar lawsuits against numerous defendant Internet tobacco companies, including: *City of New York v. Esmokes, Inc.* at al., 03 CV 10091, *City of New York v. A.E.* *Sales LLC, et al.,* 03 CV 7715, and *City of New York v. Smokes–Spirits.Com, Inc., et al.,* 04 CV 6616. Defendants in those cases have filed motions to dismiss on similar grounds as here.

ant to Rules 9(b), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, respectively, and to transfer venue, pursuant to 28 U.S.C. §§ 1406(a) and 1404(a).

The 16 named Defendants have been separated into three groups for purposes of this lawsuit: the Multistate Defendants, the Dirtcheap Defendants, and the Bulkcigs Defendants. For the purposes of this lawsuit, Defendants Cyco.net, Richard A. Urrea, Daniel R. Urrea, Hemi Group, Kai Gachupin, Michael E. Smith, Hooray's Inc., Stephen F. Knopp, and Dmitriy Zilberman have joined together as the "Multistate Defendants."[2] Defendants S4L, Inc., William C. Baker, Double B, and William Bevins filed their motion jointly under common representation as the "Bulkcigs Defendants." Defendants www.Dirtcheapcigs.com, Fred Teutenberg IV, and Fred Teutenberg V, have joined together as the "Dirtcheap Defendants." Otherwise, aside from the employee-employer relationships described below, these individuals and enterprises are separate and unrelated enterprises. (Am. Compl.¶ 65).

Defendants Fred Teutenberg IV and Fred Teutenberg V move to dismiss for lack of personal jurisdiction based on Fed. R.Civ.P. 12(b)(2). The Multistate Defendants, the Dirtcheap Defendants, and the Bulkcigs Defendants move to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406(a). The Multistate Defendants and the Bulkcigs Defendants also move in the alternative for transfer of venue under 28 U.S.C. §§ 1406(a) and 28 U.S.C. § 1404(a). The Multistate Defendants and the Dirtcheap Defendants move to dismiss for failure to state claims upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) and 9(b).

Plaintiff opposes all motions. For the following reasons, Defendants' motions are DENIED in part and GRANTED in part.

## I. BACKGROUND

The facts, summarized below, are taken from the Amended Complaint and the Amended RICO Statement,[3] the allegations of which must be assumed to be true for purposes of these motions to dismiss. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *McGinty v. State of New York,* 193 F.3d 64, 68 (2d Cir.1999).

### A. The Scheme

Plaintiff alleges that the Defendants conducted the management and operation of the affairs of their own enterprises, directly or indirectly, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(c), in violation of 18 U.S.C. § 1962(c), consisting of continuous and multiple instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Am. Compl.¶¶ 16, 64, 80, 90.)

---

**2.** Originally, Defendants Hemi Group and Kai Gachupin filed Fed.R.Civ.P. 12(b) motions together, but separately from the Multistate Defendants. However, they joined the Multistate Defendants in their Reply to Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss. Despite being considered a part of the Multistate Defendants, this Opinion makes reference to the "Hemi Group's" Memo of Law, where appropriate.

**3.** A RICO Statement is a document required by the Court in actions alleging RICO violations to assist the Court in determining the validity of the Plaintiff's claims. The Court views the RICO Statement as an extension of the Complaint and will refer to it to assist the Plaintiff in establishing its claims.

Specifically, Plaintiff contends that the Defendants agreed to a plan within an enterprise, whereby cigarettes would be sold to New York City residents without informing New York State tax authorities of the sales, and/or by falsely advertising the cigarettes as "tax-free," and/or by advertising that sales will not be reported to the New York State tax authorities. (Am. Compl.¶ 84). Plaintiff alleges that the scheme to defraud New York City is precisely the purpose of each enterprise. (Am.Compl.¶ 85.) Further, Plaintiff alleges that Defendants' business plans depend upon (1) concealment of their customers' purchases from state tax authorities; (2) informing their customers of Defendants' policies of concealment; and (3) concealing purchasers' tax liability from the purchasers themselves. (Am.Compl.¶ 10–12.)

Consequently, each time Defendants use the mails or wires to effect a sale of cigarettes to New York City residents while subsequently failing to file a record of the sale with the New York State tax authorities, in compliance with the Jenkins Act, 15 U.S.C. § 375 et seq., an instance of mail or wire fraud has been committed. (Am. Compl.¶¶ 16, 64, 81, 90, 91). The relevant part of the Jenkins Act provides:

> Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes, to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such a sale or transfer and shipment, shall—
>
> (1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of this principal place of business and of any other place of business; and
>
> (2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

15 U.S.C. 376(a).

Plaintiff's third and fourth claims assert that Defendants' business practices violate New York State's General Business Law § 349 and furthermore, constitute fraud under the common law. (Am. Compl.¶¶ 107, 108, 109, 111, 112, 113.) In particular, Plaintiff cites two practices as deceptive and misleading and thus, unlawful under GBL § 349:(1) Defendants' failure to file the Jenkins Act Reports with the New York State tax authorities and (2) Defendants' on-line representations to its customers that the Defendants are not legally required to file such reports and/or can sell cigarettes "tax free" on the Internet. (*Id.*)

### B. The Defendants

Plaintiff alleges that the Defendants' illegal and fraudulent conduct is carried out by seven enterprises: the "Aabakismokes Enterprise," the "Cigarettespecials Enterprise," the "Dirtcheapcigs Enterprise," the "Paylesscigs Enterprise," the "Smokes-Direct Enterprise," the "Bulkcigs Enter-

prise," and the "DiscountTobacco Enterprise." [4] (Am.Compl.¶ 62.) As explained in detail below, the following Defendants comprise the following enterprises: Defendants Cyco.net, Richard Urrea, and Daniel Urrea comprise the Aabakismokes Enterprise; Defendants Hemi Group, LLC and Kai Gachupin comprise the Cigarettespecials Enterprise; Defendants Dirtcheapcigs.com, Fred Teutenberg IV, and Fred Teutenberg V comprise the Dirtcheapcigs Enterprise; Defendant Michael E. Smith comprises Paylesscigs Enterprise; Defendants Hooray's, Stephen Knopp, and Dmitriy Zilberman comprise the Smokes–Direct Enterprise; Defendants S4L Distributing, Inc. and William C. Baker III comprise the Bulkcigs Enterprise; and Defendants Double B Distributing and William J. Bevins comprise the DiscountTobacco Enterprise. (Am. RICO Stmt. at 1–5.) Each enterprise is a competitor in as much as each sells cigarettes via the Internet. Defendant enterprises reside in and operate from four different states: Kentucky, Missouri, New Mexico and Virginia.

## 1. Multistate Defendants

For the purposes of this lawsuit, Defendants Cyco.net, Richard A. Urrea, Daniel R. Urrea, Hemi Group, Kai Gachupin, Michael E. Smith, Hooray's Inc., Stephen F. Knopp and Dmitriy Zilberman have joined together to file their 12(b)(3) motion to dismiss. (Pl.'s Mem. of Law at 1.) Plaintiff alleges the Multistate Defendants consist of four separate enterprises: the Aabakismokes Enterprise, the Cigarettespecials Enterprise, the Paylesscigs Enterprise, and the Smokes–Direct Enterprise.

### a. Aabakismokes Enterprise

Plaintiff alleges the Aabakismokes Enterprise includes Defendants Cyco.net, Inc., Richard Urrea and Daniel Urrea.

Defendant Cyco.net, Inc. is a publicly traded corporation, organized under the laws of the State of New Mexico with a principal place of business in Albuquerque, New Mexico. (Am.Compl.¶ 20.) Plaintiff alleges Defendant Cyco.net is an associate of Aabakismokes Enterprise (Am. Compl.¶ 67), and that Cyco.net owns and/or controls the Aabakismokes Enterprise.

Cyco.net, Inc. employs four people, all of whom reside in the District of New Mexico. (Urrea Decl. ¶ 6; Am. RICO Stmt. at 2.) Plaintiff alleges that the Aabakismokes Enterprise operates the Internet websites www.aabakismokes.com and www.cycocigs.com. Plaintiff alleges that at the direction of Cyco.net and its principals, Defendants Daniel Urrea and Richard Urrea, the Aabakismokes Enterprise sells cigarettes to New York City residents and conceals the sales from New York State tax authorities. Approximately forty percent of the Aabakismokes Enterprise's Internet sales are to New York residents. (Am.Compl.¶ 20.) Plaintiff alleges that Cyco.net has offered "premium giveaways" in New York City to promote its services. (Am. RICO Stmt. at 2.) Moreover, Plaintiff asserts that Cyco.net also directs the enterprise to make misrepresentations regarding its responsibilities under the Jenkins Act (Am. RICO Stmt. at 2). Specifically, Plaintiff alleges that the Aabakismokes Enterprise states on its website that "[a]t no time will we sell, copy or transfer our email list or customer names and addresses to any person or

---

**4.** Plaintiff mistakenly refers to "DiscountTobacco Enterprise" as the "Double B Enterprise" elsewhere in its Amended Complaint.

*See* (Am.Compl.¶ 34.) This Opinion only refers to DiscountTobacco Enterprise.

entity including governments." (Am. Compl.¶ 53(a).)

Defendant Richard A. Urrea, President of Defendant Cyco.net, is a citizen of the State of New Mexico. (Am.Compl.¶ 21.) Defendant Daniel R. Urrea, Chief Financial Officer of Defendant Cyco.net., is also a citizen of the State of New Mexico. (Am.Compl.¶ 22.) Richard Urrea owns and operates Cyco.net, Inc. (Urrea Decl. ¶ 1.) Both Richard Urrea and Daniel Urrea are substantial shareholders of the enterprise (Am. RICO Stmt. at 2.)

Plaintiff alleges that Defendants Richard Urrea and Daniel Urrea are associates of the Aabakismokes Enterprise. (Am. Compl.¶ 67.) Plaintiff alleges that in this capacity, Richard and Daniel Urrea direct the enterprise to conceal sales to New York City residents from the New York State taxing authorities and also make false statements concerning tax liability to New York City residents. (Am. RICO Stmt. at 2).

#### b. Cigarettespecials Enterprise

Plaintiff alleges the Cigarettespecials Enterprise is composed of Defendant Hemi Group, LLC and Defendant Kai Gachupin. For the purposes of this action, Defendants Gachupin and Hemi Group have filed a Reply jointly with the Multistate Defendants.

Defendant Hemi Group, LLC ("Hemi Group") is a limited liability New Mexico corporation with its principal place of business in the Pueblo of Jemez, a federally recognized sovereign nation of North American Indians. (Am. Compl. ¶ 23; Gachupin Decl. ¶ 4.) All of Hemi Group's facilities, offices, assets, books and records are located in Pueblo of Jemez, with the exception of an administrative office in Albuquerque; both Pueblo of Jemez and Albuquerque are in the District of New Mexico. (Gachupin Decl. ¶ 15.)

Plaintiff alleges that Defendant Hemi Group is an associate of the Cigarettespecials Enterprise. (Am.Compl.¶ 68.) Plaintiff alleges that Defendant Hemi Group owns or controls the CigaretteSpecials Enterprise, a retail cigarette outlet referred to variously as "Cigarettespecials," "BuyDiscountCigarettes," "FreeCigs4u," "Cybercigarettes" and "Adobe Cigarettes," that sells cigarettes over the Internet via five web addresses: www.cigarettespecials.com, www.BuyDiscount Cigarettes.com, www.cybercig arettes.com and www.AdobeCig arettes.com. (Am. Compl.¶ 23.) According to Plaintiff, Hemi Group directs the Cigarettespecials Enterprise to sell cigarettes to New York City residents, to conceal the sales from the New York State tax authorities, and to make misrepresentations to New York City residents concerning cigarette sales and excise tax liability. (Am. RICO Stmt. at 2.) Specifically, Plaintiff alleges the Cigarettespecials Enterprise states on its websites that it does not share customers' personal information with any other company, government agency or state taxing authority; and make statements that sales have "no tobacco tax;" and that "all sales are tax free." (Am.Compl.¶ 53(b).)

Defendant Kai Gachupin resides in New Mexico and is the sole owner of Hemi Group. (Am. Compl. ¶ 24; Gachupin Decl. ¶ 3.) Plaintiff alleges that Defendant Gachupin is an associate of the Cigarettespecials Enterprise and directs the enterprise to make sales to New York City residents, conceal those sales from the New York State tax authorities and also make misrepresentations to New York City residents concerning cigarette sales and excise tax liability. (Am. Compl. ¶ 69; Am. RICO Stmt. at 2.)

#### c. Paylesscigs Enterprise

Plaintiff alleges the Paylesscigs Enterprise consists of Defendant Michael E.

Smith. Defendant Michael E. Smith is a resident of the Commonwealth of Virginia. (Am.Compl.¶ 28.) Plaintiff alleges that Defendant Michael Smith owns or controls the Paylesscigs Enterprise, which operates the Internet websites www.paylesscig.com and www.onsaleweekly. com. (Am. Compl. ¶ 73; Am. RICO Stmt. at 2.) In this capacity, Plaintiff alleges, Defendant Smith directs the Paylesscigs Enterprise to sell cigarettes to New York City residents, to conceal those sales from the New York State tax authorities, and to misrepresent the tax status of the enterprise's sales and its obligations under the Jenkins Act (Am. RICO Stmt. at 2.) Plaintiff alleges the Paylesscigs Enterprise states on its website that:

> We do not provide your information to anyone! Most other cigarette sites don't either, but a few do report sales to state tax offices, so find out before you buy, if not you could receive an unexpected tax bill from your state tax office. The only way we will provide any information to anyone is by court order from a court with local jurisdiction.

(Am.Compl.¶ 53(d).)

Plaintiff alleges Defendant Smith is also the sole proprietor of a retail cigarette outlet known as "Paylesscigs," located in Richmond, Virginia. (Am. Compl. ¶ 28; Smith Decl. ¶ 2.) Defendant Smith has no offices or agents in New York; all documents and employees associated with PaylessCigs are located in Virginia. (Smith Decl. ¶ 4–5).

d. Smokes–Direct Enterprise

Plaintiff alleges the Smokes–Direct Enterprise consists of Defendant Hooray's Inc., Defendant Stephen Knopp, and Defendant Dmitriy Zilberman.

Defendant Hooray's, Inc. ("Hooray's") is a Kentucky corporation with its principal place of business in Louisville, Kentucky.

(Am. Compl. ¶ 29; Knopp Decl. ¶ 2, 6.) Plaintiff asserts that Defendant Hooray's, Inc. is an associate of the Smokes–Direct Enterprise. (Am.Compl.¶ 74.) Hooray's Inc. owns and/or controls Hooray's Discount Depot and also owns or controls the Smokes–Direct Enterprise, which operates Internet websites www.smokes-direct. com and www.cigsonline.com. Hooray's also operates a retail cigarette outlet known as "Smokes–Direct" (a/k/a "Cigsonline"), employing three people in one facility in Louisville, which is part of the Western District of Kentucky. (Knopp Decl. ¶ 6.) Plaintiff alleges that Hooray's, Inc. directs the Smokes–Direct enterprise to sell cigarettes to New York City residents, to conceal these sales from New York State tax authorities and make misrepresentations to New York City customers regarding the tax status of the enterprise's cigarette sales and its obligations under the Jenkins Act. (Am. RICO Stmt. at 4.)

Defendant Stephen F. Knopp is the President of Defendant Hooray's, and is a resident of Kentucky. (Am.Compl.¶ 30.) Plaintiff alleges that Stephen Knopp is an associate of the Smokes–Direct Enterprise. (Am.Compl.¶ 75.) Plaintiff contends that Defendant Knopp directs the Smokes–Direct Enterprise to sell cigarettes to New York City residents and to conceal these sales from New York State tax authorities and make misrepresentations to New York City customers regarding the tax status of the enterprise's cigarette sales. (Am. RICO Stmt. at 4.) Specifically, Plaintiff alleges the Smokes–Direct Enterprise states on its website that it "does not report any sales activity to any state taxing authority and is not required to do so." (Am.Compl.¶ 53(e).) Plaintiff alleges also that the Smokes–Direct Enterprise's privacy policy promises it "will not divulge your information to any third party with out [sic] either your

express consent or as directed by the lawful order of a court of proper jurisdiction." (Am.Compl.¶ 53(e).)

Defendant Dmitriy Zilberman resides in Kentucky and is an employee or officer of Defendant Hooray's Inc. and the "Administrative Contact" for the Smokes–Direct Enterprise Website. (Am. Compl. ¶ 31; Knopp Decl. ¶ 4.) Plaintiff contends that Defendant Dmitriy Zilberman is an associate of Smokes–Direct Enterprise. (Am. Compl.¶ 76.) Plaintiff asserts Defendant Dmitriy Zilberman directs the enterprise to conceal cigarette sales to New York City residents from the New York State taxing authorities and to make misrepresentations to New York City residents concerning the taxable status of the enterprise's cigarette sales and its responsibilities for filing Jenkins Act reports (Am. RICO Stmt. at 4.)

### 2. Dirtcheap Defendants

Plaintiff alleges that the Dirtcheapcigs Enterprise includes all of the Dirtcheap Defendants, Dirtcheapcigs.com, Fred Teutenberg IV, and Fred Teutenberg V.

Defendant Dirtcheapcigs.com, Inc. is a Missouri Corporation with its principal place of business in Paducah, Kentucky. (Am. Compl. ¶ 25; Fred Teutenberg IV Decl. at 1.) Plaintiff alleges that Defendant Dirtcheapcigs.com is an associate of the Dirtcheapcigs Enterprise. (Am. RICO Stmt. at 3.) Plaintiff alleges Dirtcheapcigs.com owns and operates the Dirtcheapcigs.com Enterprise, which maintains a cigarette outlet known as www.Dirtcheapcigs.com. (Am. Compl. ¶ 70.; Am. RICO Stmt. at 3.) Its servers, its call center, and its retail outlet are located in Paducah, Kentucky. (Fred Teutenberg IV Decl. at 1). Defendant Dirtcheapcigs.com has no offices or agents in New York. (*Id.*) Dirtcheapcigs.com, Inc., however, has taken out print advertisements in New York City

to promote the services of the enterprise, although the content of these advertisements is unclear. (Am. RICO Stmt. at 3.)

Plaintiff alleges that Dirtcheapcigs.com directs the Dirtcheapcigs Enterprise to sell cigarettes to New York City residents and to conceal those sales from New York State tax authorities (Am. RICO Stmt. at 3.) Plaintiff alleges that, at Dirtcheapcigs.com, Inc.'s direction, the Dirtcheapcigs Enterprise also makes misrepresentations to New York City residents regarding the enterprise's sales and concerning the enterprise's responsibility for filing Jenkins Act reports (Am. RICO Stmt. at 3.) Specifically, Plaintiff alleges that the Dirtcheapcigs Enterprise states on its website that: "It is our researched legal opinion that we are not required to furnish [customer names and addresses to government authorities]. To date we have never furnished such information. We are the last refuge of the persecuted smoker." (Am.Compl.¶ 53(c).)

Defendant Fred Teutenberg IV resides in the Eastern District of Missouri and is President of Defendant Dirtcheapcigs.com, Inc. (Am. Compl. ¶ 26; Fred Teutenberg IV Decl. at 2.) Defendant Fred Teutenberg V is a resident of the Eastern District of Missouri and is a Vice President of Defendant Dirtcheap.com, Inc. (Am. Compl. ¶ 27; Am. RICO Stmt. at 3.) Plaintiff alleges that Defendants Fred Teutenberg IV and Fred Teutenberg V are associates of the Dirtcheapcigs Enterprise. (Am. Compl.¶¶ 71–72.) Plaintiff alleges that, as associates of the Dirtcheap Enterprise, both Fred Teutenberg IV and Fred Teutenberg V direct the enterprise to make cigarette sales to New York City residents and conceal those sales from the New York State tax authorities. Further, at the Teutenbergs' direction, the Dirtcheapcigs Enterprise makes the aforementioned misrepresentations to New York City resi-

dents concerning the tax status of the enterprise's sales and concerning the enterprise's responsibility for filing Jenkins Act reports. (Am. RICO Stmt. at 3.)

3. Bulkcigs Defendants

a. Bulkcigs Enterprise

Plaintiff alleges that the Bulkcigs Enterprise includes S4L Distributing, Inc. and William C. Baker III. Defendant S4L Distributing, Inc. ("S4L Inc.") is a Virginia corporation with its principal place of business in the Western District of Virginia. (Am. Compl. ¶ 32; Baker Decl. at 1.) Plaintiff alleges that Defendant S4L Distributing is an associate of the Bulkcigs Enterprise and in fact, owns and/or controls the Bulkcigs Enterprise. The Bulkcigs Enterprise operates the Internet websites www.bulkcigs.com and www.S4L.com. (Am. RICO Stmt. at 4.) Plaintiff further alleges that S4L directs the Bulkcigs Enterprise to sell cigarettes to New York City residents and conceal these sales from New York State tax authorities and make misrepresentations to New York City residents about the tax status of the cigarettes sold and about the enterprise's obligations under the Jenkins Act. (Am. RICO Stmt. at 4–5.) S4L, Inc. has no offices or representatives in New York. (Baker Decl. at 1.)

Defendant William C. Baker III is a citizen of Virginia, residing in the Western District of Virginia. (Baker Decl. at 1.) Plaintiff alleges that Defendant Baker is an employee or officer of Defendant S4L, Inc. and is also an associate of Bulkcigs Enterprise. (Am.Compl.¶¶ 33, 78.) Plaintiff asserts that Defendant Baker directs the enterprise to sell cigarettes to residents of New York City, to conceal the sales from New York State tax authorities, and to make misrepresentations to New York City residents about the tax status of the cigarettes sold and about the Bulkcigs Enterprise's obligations under the Jenkins Act (Am. RICO Stmt. at 5.)

b. DiscountTobacco Enterprise

Plaintiff alleges that the DiscountTobacco Enterprise is comprised of Double B Distributing and William J. Bevins. (Am. RICO Stmt. at 5.)

Defendant Double B Distributing d/b/a Discount Tobacco Store ("Double B") is a Virginia business with its principal place of business in the Western District of Virginia. (Am. Compl. ¶ 34; Bevins Decl. at 1.) Plaintiff alleges that Double B owns or controls the Discount Tobacco Enterprise, which operates the website www.discounttobacco store.com. (Am.Compl.¶ 34.) In this capacity, Plaintiff claims Double B directs the Discount Tobacco Enterprise to sell cigarettes to residents of New York City and to conceal the sales from New York State tax authorities (Am. RICO Stmt. at 5.) Plaintiff also alleges Defendant Double B directs the Discount Tobacco Enterprise to make misrepresentations to New York City residents about the tax status of the cigarettes sold and about the enterprise's obligations under the Jenkins Act. (Am. RICO Stmt. at 5.) Double B has no offices or representatives in New York. (Bevins Decl. at 1.)

Defendant William J. Bevins Jr. resides in the Western District of Virginia and is an owner or officer of Defendant Double B. (Am. Compl. ¶ 35; Bevins Decl. at 1.) Plaintiff alleges that Defendant William J. Bevins Jr. is an associate of the Discount Tobacco Enterprise and in fact, owns and/or controls the enterprise. (Am. Compl.¶ 79.) Plaintiff alleges Bevins directs the enterprise to sell cigarettes to New York City residents and make misrepresentations about the tax status of the cigarettes sold and about the Discount Tobacco enterprise's obligations under the Jenkins Act (Am. RICO Stmt. at 5.)

## II. DISCUSSION

### A. Standard of Review

In deciding a Fed.R.Civ.P. 12(b)(6) motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The Court will grant such a motion only if, after viewing plaintiff's allegations in a most favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

While a court considering a Rule 12(b)(6) motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the complaint includes any written instrument attached as an exhibit and any statements or documents incorporated by reference into the complaint. *See Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2d Cir.1994); *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir.2004). In addition, the Court may consider the factual allegations in Plaintiff's RICO Statement as a supplement to the complaint. *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir.1992); *Dornberger v. Metro. Life Ins. Co.*, 961 F.Supp. 506, 515 (S.D.N.Y.1997). Courts may also consider "documents either in plaintiff's possession or of which plaintiff [ ] had knowledge and relied on in bringing suit." *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

 It is well established under Fed. R.Civ.P 9(b) that in all averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity." This heightened pleading requirement is designed to (1) provide a Defendant with notice to enable her to prepare a defense; (2) protect a Defendant against harm to her reputation or goodwill; and (3) deter strike suits. *See DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Because Rule 9(b) requires a Plaintiff to state on the record the specific nature of the fraud, allegations of fraud may not be based upon information and belief. *See DiVittorio*, 822 F.2d at 1247. However, when the facts underlying the fraud are peculiarly within the opposing party's knowledge, a Complaint may be based upon information and belief. *Id.* But even in those circumstances, the plaintiff still bears the burden of alleging the facts upon which his or her belief is founded. *Id.* at 1248.

All of the Defendants argue that the Complaint fails to identify the fraudulent statements or circumstances with particularity as required by Fed.R.Civ.P 9(b). (Multistate 12(b)(6) Mem. at 16; Hemi Group Mem. at 22; Dirtcheap Mem. at 17.)

 To fulfill Rule 9(b)'s particularity requirements, a Complaint must specify the time, place, speaker, and content of the alleged misrepresentation. *DiVittorio*, 822 F.2d at 1247 (citing *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986)). While scienter may be averred generally, "plaintiffs are still required to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Fischer v. Tynan*, No. 90–7587, 1993 WL 213025 at *2, 1993 U.S. Dist. LEXIS 8224, *5 (S.D.N.Y. June 16, 1993) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)). This means that, "a complaint must adequately specify the statements it claims were false and misleading, give particulars as to the respect in which Plaintiff contends the

statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y.1992) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)), *aff'd*, 23 F.3d 398 (2d Cir.1994); see also *DiVittorio*, 822 F.2d at 1247; *Keenan v. D.H. Blair & Co., Inc.*, 838 F.Supp. 82, 86 (S.D.N.Y.1993); *Kubin v. Miller*, 801 F.Supp. 1101, 1117 (S.D.N.Y.1992).

■ Here, Plaintiff has shown misrepresentations made by Defendants on their websites and omissions made by the Defendants, as well as where and when they occurred. Specifically, Plaintiff has shown that the following Defendants allegedly made misrepresentations on their websites, which have occurred continuously since the websites were placed online: Dirtcheapcig.com, Fred Teutenberg IV, Fred Teutenberg V, Hooray's, Stephen K. Knopp, Hemi Group, Kai Gachupin. (Am. RICO Stmt. at 8.) As discussed later, although Plaintiff has shown that statements were made on the following Defendants' websites, it is not clear that the statements made were misrepresentations: Cyco.net, Richard A. Urrea, Daniel R. Urrea, Michael E. Smith, and S4L Distributing, Inc. Furthermore, Plaintiff does not allege *any* statements were made on websites by the following Defendants: Double B Distributing and William J. Bevins Jr. However, because of the nature of the claim, that Defendants' actions of *not* filing Jenkins Act reports caused the City harm, information regarding sales to New York City cigarette consumers, "lies peculiarly within the opposing parties' knowledge." *DiVittorio*, 822 F.2d at 1248. Plaintiff has shown, through its communications with the New York State tax authorities, that none of the Defendants have ever filed Jenkins Act reports, which, as discussed later, may be construed as a misrepresen-

tation resulting in fraud. (Am. RICO Stmt. at 8.) Therefore, reading the Complaint and the RICO Statement generously and drawing all inferences in favor of the pleader, as a court must do when deciding a Rule 9(b) motion, *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989), the Court finds that Plaintiff has successfully pled fraudulent intent and the content of the alleged omissions with sufficient particularity.

## B. Personal Jurisdiction

Only Defendants Fred Teutenberg IV and Fred Teutenberg V contest personal jurisdiction in New York. Defendants argue that as employees of Dirtcheapcigs.com they are separate and distinct from the corporation, and while personal jurisdiction over the corporation may be proper in New York, the Court lacks personal jurisdiction over the Teutenbergs as individual defendants. (Defs.' Mem. of Law at 24.) The Teutenbergs claim they do not reside in New York, and do not have any real property, offices or agents in New York. (Teutenberg IV Decl. ¶ 8–9; Teutenberg V Decl. ¶¶ 3,6.) They contend that they have not been to New York on business, and have not made any contract in New York related to the Dirtcheapcigs.com, and have not entered into a contract to supply goods or services in New York. (Teutenberg IV Decl. ¶¶ 11–14; Teutenberg V Decl. ¶¶ 4.) The Teutenbergs state that they do not sell or transfer cigarettes in interstate commerce. (Teutenberg IV Decl. ¶ 14; Teutenberg V Decl. ¶ 14.)

■ On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), plaintiff bears the burden of establishing the court's jurisdiction over defendants. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). However, if a forum's personal jurisdiction over a defendant is questioned before discovery

has commenced, in order to defeat the motion, Plaintiff only has to establish, *prima facie*, that personal jurisdiction is proper based on information in the complaint as well as supporting documentation. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). The court must assume all the factual allegations in the complaint are true, and resolve all doubts in plaintiff's favor "notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

Exercise of personal jurisdiction for violation of civil RICO cases is dictated by 18 U.S.C. § 1965. The Second Circuit interprets this statute to allow the federal courts a more expansive jurisdictional reach than that permitted by Fed.R.Civ.P. 4(k).[5] In general federal courts must guarantee that personal jurisdiction is in accordance with both the long-arm statute of the state in which the federal court is located and the Constitution.

The Due Process Clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a nonresident defendant with whom it has

> certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' In determining whether minimum contacts exist, the court considers "the relationship among the defendant, the forum, and the litigation." To establish the minimum contacts necessary to satisfy "specific" jurisdiction, the [plaintiff] first must show

that [his] claim arises out of or relates to [defendant's] contacts with [the forum state]. The [plaintiff] must also show that [the defendant] "purposefully availed" [himself] of the privilege of doing business in [the forum state] and that [the defendant] could foresee being "haled into court" there.

*Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1988) (citations omitted).

To establish minimum contacts under civil RICO, however, Plaintiff need only prove one of four factors listed in 18 U.S.C. § 1965(a), *inter alia*, which provides that "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir.1998).

■ Moreover, "a civil RICO action may be brought in district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *PT United Can Co.*, 138 F.3d 65, 71. The City has adequately met its burden of establishing, *prima facie*, that the Teutenbergs "transact their affairs in New York, thereby rendering them amenable to personal jurisdiction here." The legislative history of section 1965(a) reveals that it was patterned after the antitrust statutes. *See* H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 2 U.S.Code Cong. & Adm. News 4007, 4034 (1970). Thus, "transacts his affairs" lan-

---

**5.** Rule 4(k) provides, in relevant part: (1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant (1) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or (2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

guage of Section 1965(a) has been held to be synonymous with the "transacts business" language of section 12 of the Clayton Act, 15 U.S.C. § 22. *King v. Vesco*, 342 F.Supp. 120, 124 (N.D.Cal.1972). Moreover, "[t]he test for transacting business for venue purposes under the antitrust laws is co-extensive with the test for jurisdiction under New York CPLR § 302". *Agra Chemical Distributing Co., Inc. v. Marion Laboratories, Inc.*, 523 F.Supp. 699, 702 (W.D.N.Y.1981). *Bulk Oil (USA), Inc. v. Sun Oil Trading Co.*, 584 F.Supp. 36, 39–40 (S.D.N.Y.1983). The Second Circuit has read N.Y. CPLR § 302(a)(1) to allow a corporation to act as an agent for individual defendants. *See Retail Software Services v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)).

"Plaintiff need not establish a formal agency relationship between defendants and [the corporation]. He need only convince the court that [the corporation] engaged in purposeful activities in this State in relation to [its] transaction for the benefit of and with the knowledge and consent of the [non-domiciliary] defendants and that they exercised some control over [the corporation] in this matter." *Id.*

█ Personal jurisdiction over the Teutenbergs comports with the requirements of New York CPLR § 302(a)(1) because Dirtcheapcigs.com engaged in purposeful activities in New York vis-à-vis its interactive web-site, *Bensusan Restaurant Corp. v. King* 126 F.3d 25 (2d Cir.1997); *State of Washington, Dept. of Revenue v. WWW.Dirtcheapcig.com*, 260 F.Supp.2d 1048,[6] with the consent and knowledge of its President and Vice President, the Teutenbergs. Plaintiff alleges that the Teutenbergs (1) directed Dirtcheap.com to sell cigarettes to New York City residents, (2) to conceal those sales from New York state tax authorities, and (3) to make misrepresentations regarding the tax status of their cigarette sales and their responsibilities under the Jenkins Act. (Am. RICO Stmt. at 3.) These allegations are sufficient to establish *prima facie* that the Teutenbergs transact their affairs in New York and thus, are amenable to personal jurisdiction in New York.[7]

Having established that the Teutenbergs have minimum contacts with New York, the court must also consider "whether the assertion of jurisdiction 'comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of a particular case.'" *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.), cert. denied, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *see also Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir.1994).

The Court is satisfied that Plaintiff's allegations concerning the Teutenbergs'

---

6. In that case, www.Dirtcheapcig.com a U.S. District Court in Washington found personal jurisdiction proper because the corporation had purposefully availed itself of the forum.

7. To determine whether Defendants "may be found" in New York, the Court also looks by analogy to another federal statute where personal jurisdiction and venue are inextricably linked: 28 U.S.C. § 1400(a), the Copyright Act. A Defendant "may be found" in any district in which he/she is amendable to personal jurisdiction. *Haaretz Daily Newspapers, Ltd. v. Chani Inc.*, No. 98–2878, 1999 WL 796163, 1999 U.S. Dist. Lexis 15581 (S.D.N.Y. Oct. 6, 1999); *See also Linzer v. EMI Blackwood Music, Inc.*, 904 F.Supp. 207, 215 (S.D.N.Y.1995); *Pfaff v. Denver Art Museum*, 94–9271, 1995 WL 373489, 1995 U.S. Dist. Lexis 8573 (S.D.N.Y. June 22, 1995).

knowledge and control of Dirtcheap-cigs.com's New York transactions amount to adequate notice that they could be reasonably haled into court in New York. If, as Plaintiff states, the Teutenbergs planned and executed a scheme to sell cigarettes to New York residents, conceal these sales from New York State tax authorities and make misrepresentations about the tax status of their cigarette sales to New York residents and their tax liability under the Jenkins Act, (Am. RICO Stmt. at 3), then it is reasonable that the Teutenbergs be subject to the jurisdiction of New York's courts.

Because the Teutenbergs transact their affairs in New York, they have established the requisite minimum contacts with New York necessary to satisfy both § 1965(a), *PT Can Co. Ltd.,* 138 F.3d at 71, and the Due Process clause of the Fourteenth Amendment of the Constitution.

## C. Venue

Multistate Defendants, www.Dirtcheap-cigs.com, Fred Teutenberg V, Fred Teutenberg IV, S4L Distributing Inc., William C. Baker, Double B Distributing and William J. Bevins move to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406(a).

 Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1404(a), 1406(a) permit the Court to dismiss a claim where venue is improper.[8] The requirement of proper venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *Leon C. Baker, P.C. v. Bennett,* 942 F.Supp. 171, 175 (S.D.N.Y.

1996). When venue is challenged, Plaintiff "bears the burden of demonstrating that a substantial part of the events or omissions giving rise to the claim occurred in this district." *G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.,* No. 97–0730, 1998 WL 78292 at *2, 1998 U.S. Dist. LEXIS 1989, *5 (S.D.N.Y. Feb. 24, 1998).

 Venue may be proper although a forum is not the only possible forum. *Fisher v. Hopkins,* No. 02–7077, 2003 WL 102845, 2003 U.S. Dist. Lexis 307 (S.D.N.Y. Jan. 9, 2003). Venue may be proper even if a greater part of the events giving rise to a claim happened in another forum. *Id.* at *7; *Astor Holdings, Inc. v. Roski,* No. 01–1905, 2002 WL 72936, at *8, 2002 U.S. Dist. LEXIS 758 (S.D.N.Y. Jan. 17, 2002). *See also Rothstein v. Carriere,* 41 F.Supp.2d 381, 387 (E.D.N.Y.1999), citing *Neufeld v. Neufeld,* 910 F.Supp. 977, 986 (S.D.N.Y.1996).

 However, venue must be properly established over each defendant for each cause of action plaintiff pleads. *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,* 927 F.Supp. 731, 736 (S.D.N.Y.1996); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure; Jurisdiction 2d Section 3808. In this case, Plaintiff has asserted a federal claim under the RICO statute, 18 U.S.C. § 1961 et seq., and a pendent claim pursuant to New York State's General Business Law § 349 as well as a common law fraud claim.

 In civil RICO cases, venue is governed by 18 U.S.C. § 1965(a) and (b). "The RICO venue provision is supplemental to the general federal venue provision found in 28 U.S.C. § 1391." *Shuman v.*

---

**8.** 28 U.S.C. § 1404(a) states: The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district in which it could have been brought.

*Computer Associates International, Inc.,* 762 F.Supp. 114, 116 (E.D.Pa.1991); *accord, Miller Brewing Co. v. Landau,* 616 F.Supp. 1285, 1291 (E.D.Wis.1985); *see also,* 1A *Moore's Federal Practice,* Venue, ¶ 0.340[7]. This means Plaintiff may properly lay venue in accordance with *either* 18 U.S.C.1965 or 28 U.S.C. 1391. As previously stated, Congress intended the civil RICO venue provisions to be a liberalization to the federal venue statute 28 U.S.C. § 1391. *See* 1970 House Report No. 1549, *reprinted in* 1970 U.S.C.C.A.N. 4007, 4034 (noting that § 1965 "contains broad provisions regarding venue and process, which are modeled on present antitrust legislation"); *See also* 116 Cong. Rec. H35196 (daily ed. Oct. 6, 1970)(remarks of Rep. Emanuel Celler that "provision is made for nationwide venue and service of process").

Defendants opposing venue in the Southern District of New York claim they do not reside, have agents, or transact their affairs in the Southern District of New York. Furthermore, they argue they cannot be found here and deny that a substantial part of the acts and/or omissions giving rise to Plaintiff's claims occurred in the Southern District of New York.

■ Although the Second Circuit has not yet clearly enunciated its position concerning the scope of civil RICO's venue provision, it is the policy in this Circuit to conflate personal jurisdiction and venue by reading the RICO venue provision to permit adjudication in any district where minimum contacts are established. *PT United Can Co. Ltd.,* 138 F.3d 65, 71; *Gates v. Wilkinson,* 01–3145, 2003 WL 21297296 *1 (S.D.N.Y. June 4, 2003) (finding venue improper because Defendants failed to meet either of the four statutory factors provided for in section 1965(a)). Accordingly, for the same reasons that personal jurisdiction in New York is proper over Defendants, so

too is venue over Plaintiff's civil RICO claim.

### 1. Venue for NYS General Business Law Section 349 and Common Law Fraud

■ Plaintiff must also establish that venue is proper for its pendent state law claims brought under New York State's General Business Law § 349. The doctrine of pendent venue permits the Court in its discretion to find venue where it arises from the same nucleus of operative facts as a "properly venued" federal claim. *See Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc.,* No. 98–4132, 1999 WL 76803, at *5 (S.D.N.Y. Feb. 17, 1999); *Banfield v. UHS Home Attendants, Inc.,* No. 96–4850, 1997 WL 342422, at *1 (S.D.N.Y. June 23, 1997). "Venue for the state law claim is clearly a function of venue for the federal claim and, in the court's discretion, pendent venue may be found over the state law claim to enable adjudication of that claim together with the federal claim." *Garrell v. NYLCare Health Plans, Inc.,* No. 98–9077, 1999 WL 459925, *4 (S.D.N.Y. June 29, 1999).

■ In determining whether pendent venue is proper, the Court must consider "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants." *Rodriguez v. Chandler,* 641 F.Supp. 1292, 1302 (S.D.N.Y.1986). Because Plaintiff's state law claim is based on the same set of operative facts as its RICO claim, the evidence and witnesses will be the same for both claims. *See University Sav. Ass'n v. Bank of New Haven,* 765 F.Supp. 35 (D.Conn.1991) (finding that where state law claims asserted against defendant in RICO action were properly before the court pursuant to doctrine of pendent jurisdiction because the claims all derived from common nucleus of operative facts, and it was in the interest of judicial

economy to hear all related claims and try the case at one time). Therefore, it serves the interests of judicial efficiency to hear Plaintiff's state law claims together with its claims under civil RICO.

## D. Transfer

Multistate Defendants, S4L Distributing, William C. Baker, Double B Distributing, and William J. Bevins move to transfer venue pursuant to 28 U.S.C. §§ 1406(a) and 1404(a). The Dirtcheapcigs and S4L Defendants' motions for transfer pursuant to 28 U.S.C. 1406(a) are mooted. Because venue is proper in the Southern District of New York, the motions to transfer pursuant to 1404(a) are moot. *Fisher v. Hopkins*, 2003 WL 102845, at *3, 2003 U.S. Dist. Lexis 307, at *9 (S.D.N.Y. July 9, 2003) (section 1406(a) does not apply when venue is correct).

■ Moreover, "a plaintiff's choice of forum is accorded significant weight" in a transfer motion. Indeed, "[t]he determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the court." *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989). In deciding a motion to transfer, the Court should consider (1) where the events at issue took place, (2) the convenience of the parties and material witnesses, (3) the relative ease of access to sources of proof, (4) the weight accorded to plaintiff's choice of forum, (5) the forum's familiarity with the governing law, (6) trial efficiency, and (7) the interest of justice. *Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 691–92 (S.D.N.Y.1994).

■ The Court is satisfied that these factors are sufficiently met in the instant case. In particular, transfer is inappropriate because neither trial efficiency nor the interests of justice are served by transfer-

ring the case. *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619 (2d Cir.1968) ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided."). Were this Court to order transfer, Plaintiff would be forced to litigate this action in four, perhaps five, judicial districts across the country. The Court will not engage in such a waste of resources. Accordingly, Defendants' motions to transfer are DENIED.

## E. Federal RICO Claims

Although primarily a criminal statute, Congress explicitly created a private right of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964–1968. "Any person injured in his business or property by reason of a violation of section 1962" may invoke the civil RICO remedies. 18 U.S.C. § 1964(c). If the plaintiff proves its injury resulted from a violation of § 1962, the plaintiff is entitled to "recover threefold the damages he sustain[ed] and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

Courts have found that an alleged RICO violation must be reviewed carefully and "with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney's fees in federal courts simply because they are cast in terms of RICO violations." *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1001 (E.D.N.Y.1995); *see also Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) ("[Civil RICO] is an unusually potent weapon—the litigation equivalent of a thermonuclear de-

vice...."); *Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 397 (S.D.N.Y.2000) (stating that "this Court looks with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purpose intended by Congress"). This Court, therefore, reviews the present Plaintiff's civil RICO pleadings with particular scrutiny.

Plaintiff alleges that various Defendants conducted the management and operation of the affairs of an enterprise, directly or indirectly, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(c) and (d), in violation of 18 U.S.C. § 1962(c) and (d), consisting of continuous and multiple instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Am.Compl.¶¶ 16, 64, 80, 90.)

The Multistate Defendants, the Hemi Group Defendants, and the Dirtcheap Defendants move to dismiss, arguing that the City does not have standing to bring a Civil RICO claim. The Dirtcheap Defendants also argue that the Complaint fails to state a civil RICO claim under 18 U.S.C. § 1962(d), which is the conspiracy provision of RICO. (Dirtcheap Mem. at 11.)

### 1. Standing Under RICO

■ To satisfy the standing requirement under § 1964(c) of the RICO statute, the section relevant here, a plaintiff must demonstrate, (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the defendant's violation. *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir.2003) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990)); *see also Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir.2003) (stating that the third element of standing, that of causation, "is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.") (quoting *Lerner v. Fleet*

*Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003)).

#### a. Violation of § 1962

As stated above, the first element needed to prove RICO standing is a violation of § 1962. Section 1962(c) of the RICO Act, which Plaintiff here alleges was violated, provides in part that, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." *See also Int'l Bhd. of Teamsters v. Carey*, 297 F.Supp.2d 706, 713 (S.d.N.Y.2004) (holding that the elements necessary to establish a violation of 1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.") (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82, 105 S.Ct. 3275, 3277, 87 L.Ed.2d 346, 349 (1985) and *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir.1994)). Here, the Court focuses on the elements of "enterprise" and "racketeering activity" to determine if a violation of § 1962 has been sufficiently pled.

#### i. Person Distinct from Enterprise

The Defendants argue the City has not alleged individuals distinct from the enterprise, and therefore that the Complaint fails to state a civil RICO claim. (Multistate 12(b)(6) Mem. at 5; Hemi Group Mem. at 5; Dirtcheap Mem. at 9.)

■ For offenses under § 1962(c), it is well settled that the alleged RICO person must be distinct from the alleged RICO enterprise. *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir.2001) (citing cases). "Because § 1962(c) speaks separately of a RICO 'person' acting on or conducting the affairs of the 'enterprise,' which clearly

envisions two entities, a plaintiff must also comply with the rule that the RICO person and enterprise referred to must be distinct." *G–I Holdings, Inc. v. Baron & Budd,* 238 F.Supp.2d 521, 546 (S.D.N.Y. 2002) (citing *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985) and *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 344 (2d Cir.1994)) (quotations omitted).

 The RICO statute defines "enterprise" as including, "any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is defined in § 1961(4) as "any union or group of individuals associated in fact although not a legal entity." This definition has been expounded by case law, as requiring "a group of persons associated together for a common purpose of engaging in a course of conduct, the existence of which is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *First Capital Asset Management, Inc. v. Satinwood, Inc.,* 385 F.3d 159, 173 (2d Cir.2004) (quoting *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (internal quotations omitted)). For an association of individuals to constitute an enterprise, the Second Circuit also requires that the individuals "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Id.* at 173 (quoting *First Nationwide Bank v. Gelt Funding Corp.,* 820 F.Supp. 89, 98 (S.D.N.Y.1993)). Such an association of "individuals" may include corporations. *See United States v. Huber,* 603 F.2d 387 (2d Cir.1979) (stating that a group of corporations may comprise an association-in-fact enterprise).

Here, the Plaintiff alleges that the 16 Defendants (who are both corporations and natural persons) are associates of seven named Internet cigarette enterprises. (Am.Compl.¶¶ 62–79.) It further alleges that the enterprises are comprised of individuals with a common purpose, a continuity of structure and personnel, and a consensual decision-making structure that is used to engage in conduct that is both legal and illegal. (Am.Compl.¶¶ 62–63.) Plaintiff also states in its RICO Statement that "No individual or business entity alleged to be a liable person herein is the same entity as the enterprise." (Am. RICO Stmt. at 12.)

The Dirtcheap Defendants argue that the Plaintiff's identification of various enterprises fails because it "cannot identify any 'enterprise' apart from the Defendants themselves." (Dirtcheap Mem. at 9.) The Dirtcheap Defendants further argue that each enterprise alleged by the Plaintiff is comprised of a corporation and its officers and employees, which is fatal to its claims. (*Id.*) The Multistate Defendants argue along similar lines, specifying that officers and employees of a business are not separate persons from their corporation and regularly carrying out their business does not constitute a separate enterprise. (Hemi Group Mem. at 5–6; Multistate 12(b)(6) Mem. at 6–7.) In its opposition, Plaintiff argues that it establishes RICO's distinctness requirement under the rubric of *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 166, 121 S.Ct. 2087, 2092, 150 L.Ed.2d 198, 206 (2001).

In *Kushner,* the Supreme Court considered whether a 1962(c) claim could be brought against Don King, who was the president and sole shareholder of the closely held corporation, Don King Productions, which also was a defendant. 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198. The Supreme Court stated that to establish liability under section 1962(c), "one must allege and prove the existence of two

distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." 533 U.S. at 161, 121 S.Ct. at 2090, 150 L.Ed.2d at 203. The Court found that the person, Don King, was distinct from the corporation, which was the RICO enterprise, because the corporation was a "legally different entity with different rights and responsibilities." 533 U.S. at 163, 121 S.Ct. at 2091, 150 L.Ed.2d at 204. The Supreme Court held that where a corporate employee acts within the scope of his or her authority to conduct the company's affairs in a way that violates RICO, the corporate employee may be considered distinct from the corporation. 533 U.S. at 164, 121 S.Ct. at 2090, 150 L.Ed.2d at 205.

Plaintiff's reliance on *Kushner* is misplaced. The Supreme Court was careful to differentiate the facts in Kushner, where the defendant Don King, who was also an employee, was the "person" and the defendant corporation was the RICO "enterprise," from other cases, "which involved quite different circumstances which are not presented here." 533 U.S. at 164, 121 S.Ct. at 2091, 150 L.Ed.2d at 205. In particular, the Court cited *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir.1994) as having different circumstances, where the "person" was the corporation and the "enterprise" was the corporation, along with its employees and agents. *Id.*

The plaintiffs in *Riverwoods* alleged that the defendant bank had coerced them through extortion and mail fraud, into restructuring loan agreements, in violation of RICO. 30 F.3d at 341. In one count, the plaintiff alleged that Marine Midland and two of its loan officers comprised an association-in-fact enterprise, known as the "Restructuring Group." *Id.* The Court of Appeals allowed that a corporate entity could be both a defendant and an enterprise, where it "associates with others to form an enterprise that is sufficiently distinct from itself," and where "there is only a partial overlap between the RICO person and the RICO enterprise." 30 F.3d at 344. The court continued, "Nevertheless, by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented." *Id.* at 344. The court found that there was not enough evidence to show that the Restructuring Group was distinct from the defendant, Marine Midland. *Id.* at 343. The court said, "Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* at 344.

The court in *Riverwoods* analogized the facts of that case with the facts in *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 440–41 (5th Cir.) (per curiam), *cert denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987). In *Atkinson*, the plaintiffs alleged that the defendant bank had violated RICO, by committing mail fraud when it sent the plaintiffs fraudulent loan statements, in excess of the rate agreed on by the parties. 808 F.2d at 439. The alleged enterprise was an association-in-fact comprised of the defendant bank, its holding company, and three bank employees. 808 F.2d at 440–41. The Fifth Circuit held that there was no evidence that the bank, its holding company, and its employees, were associated in any manner apart from the bank's activities: "Plaintiffs wholly failed to establish the existence of any entity separate and apart from the bank." *Id.* at 441. In particular, the Fifth Circuit pointed out that the mailing of the false loan statements was an activity of the

bank and "[t]here is no evidence of any other activity on the part of the alleged enterprise." *Id.* After discussing *Atkinson*, the Second Circuit in *Riverwoods* said, "Similarly, in this case, appellants cannot seriously contend that the actions of the Restructuring Group were anything other than the activities of Marine Midland employees carrying out the business of that bank." 30 F.3d at 344.

In *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir.1996), the Second Circuit clarified the difference between its holdings in *Riverwoods* and *Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir.1987), where it had said, "we see no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise.'" In *Discon*, the Second Circuit said that *"Riverwoods* involved only a single corporate entity that was associated with its employees, whereas *Cullen* involved three legally separate entities that could be differentiated from the enterprise-group. Moreover, in *Riverwoods*, the individual defendants were acting on behalf of the enterprise-corporation and therefore, it would have been especially inappropriate to hold that they were 'distinct' from the enterprise." *Id.* at 1063–64.

■ Here, Plaintiff has alleged seven "Internet Cigarette Enterprises,"[9] each of which Plaintiff alleges "sells cigarettes over the Internet, primarily to residents of states with high cigarette taxes." (Am. Compl ¶ 85; Am. RICO Stmt. at 9.) Furthermore, Plaintiff alleges that each enterprise "advertises, usually over the Internet, but also by traditional means, the availability of cigarettes at the low prices that prevail in the enterprise's home state." (Am. RICO Stmt. at 9.) And furthermore, "the enterprises are responsible for reporting the purchases to the purchasers' state tax authorities." (*Id.* at 10.) Plaintiff alleges that a predicate act of mail or wire fraud occurs "when the enterprise is directed to conceal cigarette sales from state tax authorities by failing to file Jenkins Act reports or directed to effect sales by means of misrepresentations." (*Id.* at 11.) However, the "persons" associated with the enterprises—those who "direct" the enterprises to conduct these activities—are none other than the 16 named Defendant corporations and their officers and employees.[10] (Am. RICO Stmt. 1–5.) Plaintiff has not shown that the persons who conduct the affairs of the enterprises and the enterprises themselves are distinct. Instead, all the entities that comprise the enterprise are Defendants.

Decisions decided in this district since *Kushner* are in keeping with this holding, even those that have found the distinctness element has been met. For example, *Panix Promotions, Ltd. v. Lewis*, involved a defendant boxer who counterclaimed against his promoters for de-

---

**9.** The "Aabakismokes Enterprise," the "Cigarettespecials Enterprise," the "Dirtcheapcigs Enterprise," the "Paylesscigs Enterprise," the "Smokes–Direct Enterprise," the "Bulkcigs Enterprise," and the "DiscountTobacco Enterprise." (Am.Compl.¶ 62.)

**10.** Defendants Cyco.net, Richard Urrea, and Daniel Urrea comprise the Aabakismokes Enterprise; Defendants Hemi Group, LLC and Kai Gachupin comprise the Cigarettespecials Enterprise; Defendants Dirtcheapcigs.com, Fred Teutenberg IV, and Fred Teutenberg V comprise the Dirtcheapcigs Enterprise; Defendant Michael E. Smith comprises Paylesscigs Enterprise; Defendants Hooray's, Stephen Knopp, and Dmitriy Zilberman comprise the Smokes–Direct Enterprise; Defendants S4L Distributing, Inc. and William C. Baker III comprise the Bulkcigs Enterprise; and Defendants Double B Distributing and William J. Bevins comprise the DiscountTobacco Enterprise. (Am. RICO Stmt. at 1–5.)

frauding him in various ways, in violation of RICO. No. 01–2709, 2002 WL 122302, 2002 U.S. Dist LEXIS 784 (S.D.N.Y. Jan. 17, 2002). The district court found that the three enterprises alleged were proper, but it specifically stated that neither the Panix corporation that comprised "the Panix Enterprise," nor the Panix U.S. corporation that comprised "the Panix U.S. Enterprise," were liable as a "person." *Id.* at 2002 WL 122302, *6, 2002 U.S. Dist LEXIS 784, *19–20. The court said, "The Second Circuit has held that such a construct, where a division or subsidiary of an 'enterprise' is alleged to also constitute a distinct 'person,' cannot constitute a RICO claim." *Id.* at 2002 WL 122302, *6, 2002 U.S. Dist LEXIS 784, *19 (citing *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063–64 (2d Cir. 1996)).

The district court in *Sony Music Entertainment Inc. v. Robison,* No. 01–6415, 2002 WL 272406, 2002 U.S. Dist. 3100 (S.D.N.Y. Feb. 26, 2002) found that where Sony, who was the plaintiff-counterclaim defendant, was the RICO person, it could also be considered part of the enterprise, even though Sony was part-owner of an entity identified as part of the enterprise. The court found this was possible, "because Sony does not constitute the entire enterprise." *Id.* at 2002 WL 272406, *5, 2002 U.S. Dist. 3100, *16. In *G–I Holdings, Inc. v. Baron & Budd,* 238 F.Supp.2d 521 (S.D.N.Y.2002), the court found the distinctness element met in one count where the sole defendant was a law firm that was charged with conducting an association-in-fact enterprise, the "B & B Enterprise," which was comprised of not only the law firm, but various local counsel, doctors and/or unions. *Id.* at 546. It also found distinctness in another count, where two lawyers were alleged to be the "persons" who directed the activities of the B & B Enterprise and the law firm enter-

prise. The court found under *Kushner,* that the two lawyers were separate and distinct legal entities from their law firm. *Id.* at 547. Like *Kushner,* however, the person and the enterprise alleged were different.

*Stolow v. Greg Manning Auctions Inc.,* 258 F.Supp.2d 236 (S.D.N.Y.2003) involved a stamp dealer who asserted RICO claims against various defendants whom he accused of participating in a bid-rigging scheme. The plaintiff alleged an enterprise comprised of nine corporations and seven individuals, all of whom allegedly committed mail and wire fraud. *Id.* at 247. The district court found that a distinct enterprise existed, but differentiated the facts of the case. It said, *"Unlike enterprises that only consist of a corporation and its employees,* here the bid-rigging enterprise is an amalgam of unrelated individual defendants and corporations." *Id.* (emphasis added.)

In *Moses v. Martin,* 360 F.Supp.2d 533, (S.D.N.Y.2004), the court found that a RICO claim against a company, Deborah Martin Agency, Inc., and its principal, Deborah Martin, was sufficiently pled. But again, there, the "person" was identified as Deborah Martin and other individuals and the "enterprise" was the corporation. *Id.* at 545.

Therefore, while Plaintiff is correct that it is possible for an entity to be both a RICO person and a member of a RICO enterprise, the enterprise must meet the distinctness requirement, i.e., that other entities in the enterprise are not defendants or that the entities that comprise the enterprise are different corporations or where an employee is alleged to be the person and the company is alleged to be the enterprise. Here, Plaintiff is alleging that each of the named Defendants is the "person" and those same Defendants are

the entities that comprise the various enterprises.

The Court finds that the Plaintiff has not sufficiently alleged individual "persons" who are distinct from the respective "enterprises." Viewing the Complaint in the light most favorable to the Plaintiff, as the Court must, the Court holds that the distinctiveness requirement is not met here. Despite the deficiency of the Plaintiff's pleadings on this point, the Court will afford Plaintiff the opportunity to file an Amended Complaint to attempt to cure this deficiency.

ii. Racketeering Activity—Mail and Wire Fraud

Racketeering activity is defined as the commission of one of the offenses (predicate acts) enumerated in 18 U.S.C. § 1961(1). Such racketeering activity under § 1961(1) includes mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. The mail and wire fraud statutes, which are analyzed in the same manner (*see United States v. Pierce*, 224 F.3d 158, 165 n. 5 (2d Cir.2000)), prohibit the use of the mails or interstate wires to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343.

The City alleges that by failing to file Jenkins Act reports, each Defendant "intentionally conceals the names of New York City residents who owe taxes on their cigarette purchases," and therefore has violated 18 U.S.C. §§ 1341 and 1343, the mail fraud and wire fraud statutes.[11] (Am.Compl.¶ 89.) In essence, the Plaintiff is saying that, although the Defendants' obligation to file Jenkins Act statements is not with it, but with the State, and there is nothing in the record to indicate that Plaintiff has any standing under the Jenkins Act because of any understanding or agreement between the City and the State regarding cigarette sales and excise taxes to stand in for the State, that nevertheless, Defendants' non-use of the mails or wires is a predicate act of mail or wire fraud. ("A predicate act of mail or wire fraud occurs only when the enterprise is directed to conceal cigarette sales from state tax authorities by failing to file Jenkins Act reports or directed to effect sales by means of misrepresentations," Am. RICO Stmt. at 11.)

---

**11.** The Court notes that Plaintiff's novel theory of causation here, based on the Jenkins Act (the Court is unaware of any other civil RICO actions based on the Jenkins Act), is questionable on several grounds. One question that arises is whether the Jenkins Act even applies in a civil case. The plain language of the Jenkins Act makes clear that it is a criminal act, to be used by the federal government against tobacco companies to prevent state cigarette tax avoidance prospectively, through the use of injunctions, and retrospectively, through the use of criminal penalties. It is extremely unlikely that any party other than the federal government may sue under the Jenkins Act. Despite a conclusory holding in a New York State case lacking any detailed reasoning, *Angelica Co. v. Goodman*, 52 Misc.2d 844, 276 N.Y.S.2d 766, 767 (1966), which stated that "[t]he city as well as the State has the power to enforce an act such as the Jenkins Act," and the reasoning of *State of Washington, Dept. of Revenue v. WWW.Dirtcheap.com, Inc.*, 260 F.Supp.2d 1048, 1055 n. 2 (W.D.Wash.2003), where a district court found that a private right of action could be inferred from the Jenkins Act to allow the state department of revenue to file suit, this Court remains unconvinced that parties other than the federal government may sue under the Jenkins Act. As Plaintiff here is not basing its complaint on actual violations of the Jenkins Act, but merely using the Defendants' violations of the Act (which Defendants do not seem to deny) to bootstrap allegations of fraud, the Court need not reach the question of whether in a civil case a municipality may validly enforce a seemingly criminal statute that requires that reports be filed with state taxing authorities.

■ Where a plaintiff in a RICO claim alleges racketeering activity based on the predicate acts of violating the mail or wire fraud statutes, he or she must prove three elements: (1) scheme to defraud, including proof of intent; (2) money or property as object of scheme; (3) use of mails or wires to further the scheme. *See United States v. Autuori*, 212 F.3d 105, 115 (2d Cir.2000); *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996).

The Plaintiff identifies the predicate acts as "mail and wire fraud committed through Internet websites and by telephone." (Am. RICO Stmt. at 6.) Specifically, Plaintiff alleges in its RICO Statement that the Defendants' racketeering activity consists of "intentionally concealing from New York State tax authorities cigarette sales made to New York City residents, in violation of the Jenkins Act;" and of "assurances given to Internet cigarette purchasers that their purchases will be concealed from New York State tax authorities;" and also of "statements to Internet cigarette purchasers that cigarettes sold to New York City residents are 'tax free.'" (Am. RICO Stmt. at 6.) In describing the pattern of racketeering, the Plaintiff states that "failing to file Jenkins Act reports constitutes a device or scheme to defraud state tax authorities of tax revenues and thereby constitutes mail and wire fraud." (Am. RICO Stmt. at 6.) Furthermore, Plaintiff states in its description of the pattern of racketeering that the false statements made to consumers on Defendants' websites about the sale of "tax free" cigarettes and that the enterprises are not required to file Jenkins Act reports, "are an integral part of the scheme to defraud and also constitute mail and wire fraud." (Am. RICO Stmt. at 6.) Citing *United States v. DeFiore*, 720 F.2d 757 (2d Cir. 1983), the City argues that evasion of taxes through cigarette smuggling across inter-state boundaries violates the federal mail and wire fraud statutes. (Pl. Mem. at 18.)

While the Court ultimately finds these arguments survive, it notes that they are extremely attenuated. A "scheme to defraud" under the mail or wire fraud statutes in the Second Circuit is described as "a plan to deprive a person of something of value by trick, deceit, chicane or over-reaching." *United States v. Autuori*, 212 F.3d 105, 115, (2d Cir.2000) (quoting *McNally v. United States*, 483 U.S. 350, 358, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924)). It should be noted that the actual transmissions that use the mails and wires do not have to be false or contain misrepresentations—only the scheme must be fraudulent. *See Zito v. Leasecomm Corp.*, No. 02-8074, 2004 WL 2211650, *1, 11, 2004 U.S. Dist Lexis 19778, *1, *34 (S.D.N.Y, Sept. 30, 2004) ("it is the fraudulence of the scheme itself, not any individual falsehood in any particular mail or wire communication, that must be alleged."); *Miltland Raleigh–Durham v. Myers*, 807 F.Supp. 1025, 1056 (S.D.N.Y.1992). The Second Circuit has held that although the party alleging mail or wire fraud does not have to prove that the victim was actually defrauded, it must show that harm or injury to the victim was contemplated by the schemer. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996) ("[F]raudulent intent is essential to a scheme to defraud.") (citations and quotations omitted); *see also Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir.1995) (stating that plaintiff must "adequately allege intent to defraud" the victim); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir.1994) ("[T]he victims of the scheme need not have been injured. However, the government must show that some actual harm or injury was *contemplated* by the schemer.") (citations omitted).

The Plaintiff here argues that misrepresentations are made by the Defendants on their websites to consumers about the consumers' tax obligations and the tobacco companies' obligations to file reports under the Jenkins Act; and also that fraud occurs every time an enterprise completes an interstate cigarette sale and fails to report the sale to state tax authorities by the tenth day of the month following the sale. (Am. RICO Stmt. at 7.) These predicate acts, which are entangled throughout the Plaintiff's papers, are substantively very different and require separate analyses.

As to the argument regarding misrepresentations made to consumers on websites, the Court finds there is a difference between the tobacco companies stating that cigarettes are tax-free [12] and stating that the companies do not file Jenkins Act reports. The first statement is false, while the latter one is true. Thus, "misrepresentations" were made only by some of the Defendants—those that advertised on their websites that consumers were under no obligation to pay state taxes. Based on the Plaintiff's Complaint, which of course is deemed to be true for the purposes of this Opinion, only two Defendants actually advertised that consumers do not have to pay any taxes.[13] As to the statements that the companies do not file Jenkins Act reports, it is unclear to the Court how the Defendants exercised their "scheme" by "trick, deceit, chicane or overreaching" with such true statements. Unlike other cases, where defendants' behavior and schemes were grossly offensive (*see Zito v. Leasecomm Corp.*, No. 02–8074, 2004 WL 2211650, *11, 2004 U.S. Dist Lexis 19778, *3 (S.D.N.Y, Sept. 30, 2004) (detailing acts by defendants who used unscrupulous and deceptive marketing tactics to lure victims into signing unconscionable contracts to lease e-commerce services and products and reap enormous profits)), the defendants here do not deny the fact that they do not file Jenkins Act reports. While consumers could not be deceived by these true statements, the Court recognizes that, however attenuated, the fact that the Defendants state that they do not file the reports may have encouraged some consumers into purchasing cigarettes, safe in the knowledge that they would not get caught for not paying taxes. This could be considered part of the overall scheme to defraud the City of taxes owed.[14]

■■■ The Court now turns to the "misrepresentations" made to the City by the act of *not* filing the Jenkins Act reports with the State taxing authorities. In addition to affirmative misrepresentations, the fraud statutes may be violated by "omissions of material information that the defendant has a duty to disclose." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir.2000) (citing *United States v. Altman*, 48 F.3d 96, 102 (2d Cir.1995)). The Fourth Circuit in *United States v. Brewer*, 528 F.2d 492, 496 (4th Cir.1975), held that a breach of statutory duty under the Jen-

12. In its Complaint, the Plaintiff explains that "The New York State excise tax on cigarettes is presently $1.50 per pack. The New York City excise tax is $1.50 per pack. The combined State and City sales tax is $0.33 per pack." (Am.Compl.¶ 40.) It is not clear how much of that $0.33 the City receives.

13. Defendants Hemi Group and Kai Gachupin's CigaretteSpecials.com's website says that "All sales are tax free!" and their buydiscountcig arettes.com has a flashing banner that says, "No tobacco tax." (Am. Compl, at ¶ 53.)

14. "We believe that the Internet has grown significantly as a distribution channel for cigarettes in the United States, with *Internet sales accounting for nearly 2% of industry volume in 2002;* our analysis has that number growing to 5.9% of industry volume in 2005." (Buying Cigarettes Over The Internet, Am. RICO Stmt., Ex. B.)

kins Act constitutes mail fraud. This Court finds that Defendants' duty to file reports under the Jenkins Act with the State taxing authorities of cigarette sales is clear [15] under the statute, and therefore, the failure to do so may be construed as a misrepresentation resulting in fraud.

■ To meet the second element under §§ 1341 and 1343, the Plaintiff must show that the Defendants defrauded it of money or property. The Second Circuit has consistently held that tax losses from unpaid taxes are "property" for purposes of the mail and wire fraud statutes. *E.g. Fountain v. United States*, 357 F.3d 250 (2d Cir.2004); *Porcelli v. United States*, 303 F.3d 452 (2d Cir.2002); *United States v. DeFiore*, 720 F.2d 757 (2d Cir.1983). In *Fountain v. United States*, the defendant used wire transfers to exchange currency in furtherance of a scheme to circumvent Canadian taxes on cigarette products. 357 F.3d 250. The defendant was convicted of conspiring to launder the proceeds of a wire fraud scheme, 18 U.S.C. §§ 1956(a)(1)(A)(I) and 1956(h) with the illegal underlying conduct derived from the wire fraud statute, 18 U.S.C. § 1343. The defendant brought a habeas petition under 28 U.S.C. § 2255, alleging that he had not violated the wire fraud statute because, consistent with *Cleveland v. United States*, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000), the Canadian Government did not possess "property" in its hands at the time of the alleged fraud. *Fountain*, 357 F.3d. at 251 (2d Cir.2004). Analyzing the legislative history of the mail fraud statute and the state licenses at issue in the *Cleveland* decision, the Second Circuit observed that the "core concern" of the licensing scheme in *Cleveland* was regulatory and that monetary loss was not at all involved, therefore

the "relevant inquiry is ... whether the scheme prosecuted under the mail or wire fraud statute is designed to defraud the government of its revenues or of its licenses." *Id.* at 257. Thus distinguishing *Cleveland*, the Second Circuit squarely held that "taxes owed to the government—even if not collected—are property in the hands of the government." *Id.* Therefore, the mail and wire fraud statutes are applicable to the Plaintiff's allegation that it was defrauded of sales and excise taxes.

■ The RICO statute also requires that the enterprise be engaged in activities that affect interstate or foreign commerce. The standard in the Second Circuit regarding whether the use of mails and wires affects interstate or foreign commerce is generally low. "RICO plaintiffs may satisfy this element by showing only 'a minimal effect on interstate commerce.'" *First Capital Asset Mgmt. v. Satinwood*, Inc., 385 F.3d 159, 173 n. 12 (2d. Cir.2004) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir.2001)). Here, it is undisputed that the Defendants use the wires and mail to advertise, sell, and/or deliver their wares to other states, thus their overall scheme has an effect on interstate commerce.

b. Injury to Business or Property

The second standing requirement under RICO is that the injury be an injury to "business or property." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). The City alleges that it has been injured by the loss of tax revenues that results because Defendants are "intentionally withholding Jenkins Act reports from the New York [State] tax authorities." (Am.Compl.¶ 2.)

---

**15.** However, the Court recognizes that this statutory duty to file Jenkins Act reports is not a duty owed to the Plaintiff.

■ The City's tax losses are "property" as defined under 1964(c), and therefore are recoverable in a RICO civil action.[16] *Porcelli v. United States,* 303 F.3d 452 (2d Cir.2002) (defendant's fraudulent under-reporting of sales tax returns injury sufficient to support RICO and mail fraud convictions); *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985)(reversing district court's dismissal for lack of standing of state department of revenue's RICO action against retailer who filed false state sales tax returns); *European Community v. RJR Nabisco, Inc.,* 150 F.Supp.2d 456, 493–500 (E.D.N.Y.2001)(governmental agency suffered injury to business or property, through loss of cigarette tax revenues and increased costs of enforcement, for purposes of RICO standing).

Relying on *Town of West Hartford v. Operation Rescue,* 915 F.2d 92 (2d Cir. 1990) and *City of New York v. JAM Consultants, Inc.,* 889 F.Supp. 103 (S.D.N.Y. 1995), the Dirtcheap Defendants argue that, as a governmental entity, the City must allege injury to its business or property in its capacity as a party to a commercial transaction. (Dirtcheap Mem. at 3, 4.) In *Town of West Hartford,* a municipality brought a RICO action to recover damages incurred by the town in connection with a series of anti-abortion protests. The Town alleged that the protesters had injured its "business or property" by reducing its ability to respond to police and fire emergencies, by impairing the level of alertness of its police, and by forcing it to pay overtime wages. 915 F.2d at 103. The Second Circuit held that the Town failed adequately to plead the predicate offense of extortion, and accordingly failed to establish "racketeering activity" within the

meaning of 18 U.S.C. § 1962(c). *Id.* at 102–03.

The Second Circuit analyzed the Town's claims under the standard of *Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). There, the Supreme Court rejected the State of Hawaii's damages claim for antitrust violations because the Clayton Act's requirement of injury to "business or property" referred to commercial interests or enterprises:

> Hawaii refers not only to injuries to a governmental entity's "general economy," but also to its "ability to carry out its functions," as falling outside the concept of statutory injury to its "business or property." The subsequent gloss in *Reiter v. Sonotone,* allowing a governmental entity to recover for such injury only when it functions "as a party to a commercial transaction," makes the point even clearer. Injuries of the sort asserted by the Town do not fall within the ambit of section 1964(c).

*Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990)(internal citations omitted).

However, the Court later cautioned:

> We need not rule, however, that the Town's view of section 1964(c) is so implausible that, standing alone, it would warrant dismissal of the Town's RICO claim for failure of subject matter jurisdiction. Suffice it to say that the section 1964(c) problem heightens the already severe inadequacies of that claim which result from the Town's meritless invocations of the Hobbs Act. We reiterate, finally, our recent admonition that "the purpose of civil RICO liability does not extend to deterring any illegal act . . .

---

**16.** Whether the City is the proper authority to claim RICO for violating the Jenkins Act by

mail and wire fraud is another question.

for which there are state and common law remedies." *Id.* (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir.1990)).

Subsequent authority provides divergent guidance on whether *Town of West Hartford* imposes a requirement that a municipality plead injury to its business or property "as a party to a commercial transaction" to meet the requirements of RICO standing. In dicta in *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103 (2d Cir.2001), specifically citing its discussion of the "party to a commercial transaction" requirement, the Second Circuit characterized as dicta the *Town of West Hartford* statement that "a government's additional law enforcement costs were not recoverable under RICO." 268 F.3d at 132 n. 40. District courts in this Circuit are split on the question.[17]

In light of the dicta-upon-dicta unsettled state of the law on the commercial transaction requirement under RICO, this Court on a motion to dismiss cannot say as a matter of law that the Plaintiff has failed to satisfy a requirement that may or may not exist. Accordingly, the Court finds that the City's loss of its right to collect sales taxes may be "injury to its business or property" for purposes of the RICO statute and so the Plaintiff survives the motion to dismiss on this element.

c. Causation

The third element that must be satisfied to establish standing under RICO is that the injury was caused by the violation of § 1962. The Multistate Defendants and the Dirtcheap defendants argue that the alleged RICO violation is not the proximate cause of any injury to the City and that therefore the City does not have standing to bring a Civil RICO claim. (Hemi Group Mem. at 8; Multistate 12(b)(6) Mem. at 8; Dirtcheap Mem. at 5–7.) The Multistate Defendants also argue that the City is not in the intended class of beneficiaries the Jenkins Act was intended to remedy, as the City is not statutorily entitled to receive the Jenkins Act reports. (Hemi Group Mem. at 8; Multistate 12(b)(6) Mem. at 8.)

The clause "by reason of" in 18 U.S.C. § 1964(c) limits standing to those plaintiffs who allege that the asserted RICO violation was the "proximate cause"

---

17. *Compare Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 103 F.Supp.2d 134, 154 (N.D.N.Y.2000) ("In short, Town of West Hartford requires injury to the government's commercial interests in RICO claims. The Court has been unable to find any Supreme Court or Second Circuit cases that have overruled, abrogated, or otherwise departed from this holding to which this Court is bound."), *and City of New York v. JAM Consultants, Inc.*, 889 F.Supp. 103, 105 (S.D.N.Y.1995) ("[T]he Second Circuit has held that where a municipality sues under RICO, it must allege injury to its business or property in its capacity as a party to a commercial") (internal citations and quotations omitted), *with European Community v. RJR Nabisco, Inc.*, 150 F.Supp.2d 456, 497 (E.D.N.Y.2001) ("No plausible reading of Town of West Hartford requires the inference of a novel standing requirement in order to reach its uncontroversial conclusion that the district court lacked subject matter jurisdiction to hear the Town's wholly implausible claims. In fact, the *Town of West Hartford* court explicitly stated that the plaintiffs' failure to satisfy the 'business or property' requirement was inessential to its holding."), *and United States v. Bellomo*, 954 F.Supp. 630, 642–43 (S.D.N.Y.1997) ("The Circuit's holding in *Town of West Hartford* . . . turned on the special difficulties of applying the Hobbs Act in the public context. It cannot be applied uncritically outside that context, as indeed is suggested by the fact that the Court reiterated its prior holding that property under the Act includes, in a broad sense, any valuable right considered as a source or element of wealth . . .") (internal citations and quotations omitted).

as well as the "but for" cause of their injury. *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532, 544 (1992); *Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 257 (2d Cir.2004); *Baisch v. Gallina,* 346 F.3d 366, 372 (2d Cir.2003); *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.,* 271 F.3d 374, 380 (2d Cir.2001). Quoting the Supreme Court, the Second Circuit in *Ideal Steel* explained that "a plaintiff cannot complain of harm so remotely caused by a defendant's actions that imposing legal liability would transgress our ideas of what justice demands, or of what is administratively possible and convenient." 373 F.3d at 257 (quoting *Commercial Cleaning,* 271 F.3d at 380 (quoting *Holmes,* 503 U.S. at 268, 112 S.Ct. 1311)) (quotations omitted).

■ In *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 122–23 (2d Cir.2003), the Second Circuit provided a two-part test to determine proximate causation. First, a Plaintiff's injury must have been "proximately caused by a pattern of racketeering activity violating [18 U.S.C. § ] 1962 or by individual RICO predicate acts," 318 F.3d at 122–23 (quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990)) and second, the injury must have been "reasonably foreseeable." *Id.* at 123. *See also Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 235–36 (2d Cir.1999) (stating that as a general rule, proximate cause requires that both direct injury and foreseeability be found). In *Baisch v. Gallina,* 346 F.3d 366 (2d Cir.2003), the Second Circuit provided further guidance on the first part of the *Lerner* test:

In other words, a plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the

injury was proximately caused by some non-RICO violations committed by the defendants.

346 F.3d at 373.

In *Lerner,* investors who had lost money brought a civil RICO action against three banks, alleging that the banks had committed wire fraud and mail fraud by failing to file dishonored check reports for an attorney named David Schick with the New York Lawyer's Fund for Client Protection. The Second Circuit described plaintiffs' theory of causation:

Plaintiffs claim that, by failing to report the bounced checks to the Lawyer's Fund as required by New York regulations, defendants prevented the New York State Attorney Discipline System from taking action against Schick. Had the Lawyer's Fund been informed that Schick was improperly overdrawing funds from his clients' escrow accounts, the Appellate Division would have immediately suspended or disbarred him from the practice of law; this would have led plaintiffs, the investors, to distrust Schick and discontinue their investments, thus sparing millions of dollars in losses.

*Lerner,* 318 F.3d at 123–24.

Because in *Lerner* and in this case the plaintiffs allege RICO violations grounded in wire fraud and mail fraud, arising from failures to comply with reporting requirements, there is at least a superficial parallel between the facts in *Lerner* and those before this Court. In *Lerner* the Second Circuit found that:

In order to demonstrate some link between the RICO violations alleged and the loss of their investments, plaintiffs must show that, if the defendant banks had not committed the predicate acts of mail and wire fraud, (1) unspecified third parties would have become aware that there were insufficient funds in the es-

crow accounts to cover Schick's checks; (2) the Lawyer's Fund, in some fashion, would then have become aware of these bounced checks; (3) the DDC or DGC, upon receiving the report of dishonored checks from the Lawyer's Fund, would have recommended to the Appellate Division that Schick be suspended or disbarred; (4) the Appellate Division would have investigated Schick and adopted this recommendation almost "immediately" after Schick bounced these checks; and (5) plaintiffs would have been made aware of Schick's removal from the practice of law in time to halt further investments. Each of the assumptions upon which this theory rests is inherently speculative.

318 F.3d at 123–24.

Plaintiff here states clearly that "a predicate act of mail or wire fraud occurs only when the enterprise is directed to conceal cigarette sales from state tax authorities by failing to file Jenkins Act reports or directed to effect sales by means of misrepresentations." (Am. RICO Stmt. at 11.) Therefore, to demonstrate a link between the allegedly fraudulent omissions of Jenkins Act reports to the State and the tax losses suffered by the City, the City must show that, were it not for the alleged mail and wire fraud of not filing reports, (1) the City would have received the Jenkins reports from the State, and (2) the City would have known whom to pursue, and (3) would have located them, and (4) would have collected taxes from them. This chain of events is arguably almost as inherently speculative as the fact pattern in *Lerner*.

Entwined with the idea that failing to file Jenkins Act reports constitutes fraud is the argument that because the Defendants advertised their wares as being "tax free," and advertised that the transactions would not be filed with the State, consumers bought cigarettes online. Plaintiff's argument seems to be that if Defendants had not advertised as they did, the customers would have bought cigarettes from brick and mortar establishments within New York City and automatically would have paid the taxes imposed on each pack of cigarettes. Thus, the City would have obtained the taxes owed to it, without having to rely on Jenkins Act Reports to the State to go after non-cigarette-tax-paying Internet tobacco consumers in New York City. The Court notes that this chain of events is highly implausible. According to the Prudential Report, cited by the Plaintiff, and appended in its RICO Statement, the vast majority of Interstate cigarette purchasers initiate online purchases already knowing the "advantage" regarding taxes:

> We believe there are four primary reasons that the Internet has grown as a distribution channel for cigarettes:
>
> The most important, we believe, is that the consumers want to avoid state and municipal excise taxes that they would otherwise have to pay if they purchased cigarettes from a traditional "bricks and mortar" retailer.

(Am. RICO Stmt. Ex B, "Buying Cigarettes Over the Internet," at 3.)

Therefore, the argument that "misrepresentations" made on Defendants' websites induced otherwise tax-paying consumers to purchase cigarettes online, and is thus a proximate cause of Plaintiff's injury, is far-fetched.

Second, to establish proximate causation for RICO standing, a plaintiff must have suffered a direct injury that was arguably foreseeable to the defendant: "Central to the notion of proximate cause [under RICO] is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those

with respect to whom his acts were 'a substantial factor in the sequence of responsible causation,' and whose injury was 'reasonably foreseeable or anticipated as a natural consequence.'" *Lerner*, 318 F.3d at 123 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir.1994)). The *Baisch* court explained that

> [a]s an elaboration of this second prong relating to the directness of the injury, Lerner noted that "the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise." *Id.* at 124.

It was arguably foreseeable to Defendants that the City would be injured by their failure to file tax reports with New York State. Indeed, the Amended Complaint includes references to statements made by individual Defendants (acting as principals of the corporate Defendants) reflecting their knowledge of the increase in New York City residents who purchased cigarettes after the increase in New York City taxes was implemented. (Am. Compl.¶¶ 57, 59.)

The Multistate Defendants argue that the City does not have RICO standing because the City is not an intended beneficiary of the reporting requirements of the Jenkins Act. (Multistate Mem. at 8; Hemi-Group Mem. at 8.) This amounts to an argument that Plaintiff does not have RICO standing because the City is not within the "zone of interest" of the Jenkins Act. However, the Second Circuit made it clear in *Baisch* that, unlike other circuits, statutory standing is included in a proximate cause analysis. 346 F.3d at 373. Furthermore, it held, that "[w]e now clarify that it is inappropriate to apply a zone-of-interest test independent of this circuit's proximate cause analysis." *Id.*

Citing *Metromedia Co. v. Fugazy*, 983 F.2d 350, 368 (2d Cir.1992), the Dirtcheap Defendants argue that the City is required to demonstrate that it relied on Defendants' misrepresentations to prove the RICO predicate act of mail fraud. (Dirtcheap Mem. at 10). Because Plaintiff has not shown justifiable reliance upon Defendants' alleged fraud, the Defendants argue that the Complaint therefore fails to state a civil RICO claim. (*Id.* at 10.)

 As part of the causation element of RICO, the Second Circuit has adopted a "reliance" component that plaintiffs seeking to recover under civil RICO where the predicate acts are mail or wire fraud, must prove. In *Welfare Fund v. Lollo*, 148 F.3d 194 (2d Cir.1998), the court agreed with the district court judge in *Shaw v. Rolex Watch, U.S.A.*, 726 F.Supp. 969 (S.D.N.Y. 1989), that although the mail-fraud statute does not specify a reliance requirement, in order to satisfy the causation requirement of § 1964(c), the plaintiff in a civil RICO claim must prove reliance. 148 F.3d at 196–97. *See also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir.1990) (stating that in the context of a RICO case that involved mail fraud claims, it was necessary for the plaintiff to demonstrate that the defendant's misrepresentations were relied on by the plaintiff and that as a result of such reliance, the plaintiff suffered harm); *Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir.2004) (holding that it is well established in the Second Circuit that for civil RICO claims involving mail fraud, the plaintiff must show "reasonable reliance" on the defendant's misrepresentations in order to successfully prove a causal connection between the defendant's violation and the plaintiff's injury).

The Dirtcheap Defendants argue that any alleged omission by failure to file reports required under the Jenkins Act does

not harm the City's business or property, because the Jenkins Act requires only that reports be provided to New York State, and not to the City of New York. (Dirtcheap Mem. at 6.)

Because the Jenkins Act reports under the statute must be filed with the State, not the City, this argument raises the question of "whether a plaintiff who is injured as a proximate result of fraud should be able to recover regardless of whether it was the plaintiff or a third party that was deceived." *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 263 (2d Cir.2004).

While reliance is a necessary component to a successful mail or wire fraud claim under civil RICO, the Second Circuit "has not held that the civil-RICO plaintiff who alleges mail fraud or wire fraud must have been the entity that relied on the fraud." *Ideal Steel*, 373 F.3d 251, 262 (analyzing cases that have held that a civil RICO claim based on mail or wire fraud must show reliance on the misrepresentation and stating that "none of those cases held that the plaintiff's own reliance was required").

Here, if the Defendants do not file Jenkins Act reports with the State, the City alleges it has no way to learn of cigarette sales made by Defendants to City residents. The State relies on the tobacco companies to follow the law and file reports and the City relies on the State to provide it with information. When the companies do not file the reports with the State, the City, consequently, is defrauded of taxes it is owed. Because this Court found that failure to file the Jenkins Act reports with New York State is part of a "scheme to defraud," and thus constitutes the predicate acts of mail and wire fraud, the fact that the State, a third party, was deceived, has no bearing on the question of proximate cause. "[A] plaintiff has stand-ing to pursue a civil RICO claim .... where the scheme depended on fraudulent communications directed to and relied on by a third party rather than the plaintiff." *Id.* at 263. Therefore, the failure to file reports with the State may be construed as a misrepresentation resulting in an injury to the City and survives a motion to dismiss.

Accordingly, the City has pleaded an injury that is directly related to Defendants' predicate acts of mail and wire fraud under 18 U.S.C. § 1961(1), which was reasonably foreseeable to the Defendants.

### 2. Underlying Claim

The Dirtcheap Defendants argue that, because the "underlying claims" fail, the complaint fails to state a civil RICO claim under 18 U.S.C. § 1962(d), which is the conspiracy provision of RICO. (Dirtcheap Mem. at 11.) Plaintiff alleges that each Defendant conspired to violate § 1962(c), in violation of § 1962(d).

Section 1962(d) of the RICO statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." The requirements for a RICO conspiracy charge generally are low. In a civil RICO claim, a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme." *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir.2003) (quoting *Salinas v. United States*, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)). Furthermore, one must show that the defendant "embraced the objective of the alleged conspiracy and agreed to commit predicate acts in furtherance thereof." *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir.2000) (quoting *United States v. Viola*, 35 F.3d 37, 43 (2d Cir.1994)) (quotations omitted).

Of course, whether Plaintiff prevails on this claim depends on whether it prevails on its § 1962(c) claim. Given the low threshold and the fact that Defendants base this motion to dismiss only on the fact that the underlying claim fails, the Court finds that, if, upon amending its Complaint, the Plaintiff successfully alleges standing under RICO for 1962(c), this claim, too, will survive the motion to dismiss.

However, without establishing the distinctness requirement under § 1962, Plaintiff has not alleged sufficient standing to assert its RICO claims against defendants for violation of § 1962(c) or (d). Therefore, Defendants' motion to dismiss the RICO cause of action is GRANTED, with leave to amend the Complaint to cure this deficiency.

## F. Pendent State Jurisdiction Claims

### 1. NY General Business Law § 349

Plaintiff also has asserted a state law claim for violation of General Business Law § 349. The Multistate Defendants argue that, because Jenkins Act reports are provided to state authorities and not to consumers or to the City, a failure to file Jenkins Act reports cannot constitute a violation of GBL § 349. They argue that because Jenkins Act reports are not directed at consumers, they cannot have been materially misleading, and also that the City's inability to claim taxes cannot be causally linked to the Defendants' omissions of the act of filing Jenkins Act reports. (Multistate 12(b)(6) Mem. at 10–11; Hemi Group Mem. at 17.) The Multistate Defendants also argue that the statements in notices on websites are not material representations on which consumers could rely (Multistate 12(b)(6) Mem. at 11; Hemi

Group Mem. at 18), and that there is no causal link between the Defendants' notices to consumers and any injury to the City. (Multistate 12(b)(6) Mem. at 12–13; Hemi Group Mem. at 20.) Dirtcheap Defendants also argue that the City has failed to allege the requisite elements of GBL § 349, because fully disclosed acts are not deceptive under § 349, statements of opinion are not actionable under § 349, and the Defendants did not cause actual injury to the consuming public or to the City. (Dirtcheap Mem. at 11–13.)

The New York Consumer Protection Act, codified at § 349(a) of the New York General Business Law, provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Although originally written to enable the state attorney general to file suit, the statute was amended in 1980 to include a private right of action, "to afford additional protection for consumers, allowing them to bring suit on their own behalf without relying on the attorney general for enforcement." *Blue Cross and Blue Shield of New Jersey, Inc., et al. v. Philip Morris USA Inc., et al.,* 3 N.Y.3d 200, 785 N.Y.S.2d 399, 818 N.E.2d 1140 (2004) (quoting Assembly Mem. in Support, Bill Jacket, L 1980, ch. 346). Section (h) of the GBL states that, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such lawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."[18]

"Person" is not defined in the GBL § 349 statute, however, courts have allowed private actions by companies. *See*

---

18. Because Plaintiff is not the Attorney General of New York State and does not point to any agreement with the State that authorizes it to sue in the State's place, the Court presumes Plaintiff has brought this claim under section (h) of the state statute.

*Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (stating, "corporate competitors now have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue.") (quoting *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 786 F.Supp. 182, 215 (E.D.N.Y.)Susan E. Stenger, Perkins, Smith & Cohen, LLP, Boston, MA, for Keith Schneider, Plaintiff. , vacated in part on other grounds, 973 F.2d 1033 (2d Cir.1992)) (and stating, "[s]ection 349 does not expressly provide a right of action by one business competitor against another, but it does provide a right of action to any person who has been injured by reason of any violation of this section.") (quoting *H2O Swimwear, Ltd. v. Lomas,* 164 A.D.2d 804, 560 N.Y.S.2d 19, 21 (1st Dep't 1990)) (quotations omitted). The New York Court of Appeals has commented on the statute's consumer-protective purpose, stating, "As shown by its language and background, section 349 is directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24 623 N.Y.S.2d 529, 532 (1995). The Court of Appeals went on to say, "as a threshold matter, plaintiffs claiming the benefits of section 349—whether individuals or entities [such as the plaintiff union funds]—must charge conduct of the defendant that is consumer-oriented." *Id.* This Court is unaware of any other cases brought by New York City under GBL § 349 and it is unclear to the Court, given the consumer-oriented nature of this law, that a government entity such as the Plaintiff is the proper plaintiff to bring suit under it. However, without case law explicitly stating the City may not bring its suit, the Court will analyze the Plaintiff's claims.

For a successful GBL § 349 claim, a plaintiff must allege (1) deceptive acts or practices directed toward consumers; (2) the acts are misleading in a material way and (3) the plaintiff has been injured as a result. *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). An act or practice that is deceptive is one that would mislead a consumer. *S.Q.K.F.C., Inc., v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629 (2d Cir.1996) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).

The Plaintiff argues first that Defendants' failure to file Jenkins Act reports is "materially deceptive and misleading to New York City consumers." (Am. Compl.¶ 107.) It further argues that Defendants' statements that their cigarettes are "tax-free" and/or that defendants are not required to file Jenkins Act reports "are materially deceptive and misleading to New York City consumers." (*Id.* at ¶ 108.) As a result of the Defendants' "deceptive and misleading conduct," the City claims it has been injured because it has been unable to collect taxes owed. (*Id.* at ¶ 109.)

Plaintiff's first argument under this claim is illogical. The Court fails to see how, first, the Defendants' failure to file the Jenkins Act reports is "a deceptive act or practice," to consumers and second, how not filing the reports is misleading to New York City *consumers.* The act of not filing reports understandably results in the City not knowing which consumers[19] to tax, but the Court finds there is no basis for the City to claim that the act of not

---

**19.** Indeed, one could argue that the consumer

benefits from the deceptive act or practice.

filing the reports misleads consumers in any way, as required under the statute.

■ Plaintiff's second argument—that statements made by Defendants on their websites that their cigarettes are "tax-free" and that they are not required to file Jenkins Act reports are materially deceptive—is viable. However, not all Defendants make such assertions. Only certain Defendants state on their websites that their cigarettes are "tax-free."[20] Those Defendants who do not deny the fact that they do not file Jenkins Act reports have made true statements and therefore not misleading statements.[21] Other Defendants, however, explicitly state on their websites that they do not have to file the reports.[22] Only the Defendants that state their cigarettes are tax-free and those that state they do not have to file Jenkins Act reports could be construed as having misled consumers. Plaintiff's reasoning implies that such statements induce naive consumers who just happened to wander onto these websites while surfing the Internet and were totally unaware of "tax free" cigarette sales before, into purchasing cigarettes from such websites, knowing the sales will not be reported to the State.

However, as acknowledged in the Prudential Financial Research Report, cited by Plaintiff and appended to its RICO Statement, the number of Internet customers who learn about the alleged tax advantage only *after* logging onto Defendants' websites and who are then convinced to purchase cigarettes, is *de minimis*.[23] (Am. RICO Stmt. Ex B, "Buying Cigarettes Over the Internet.") Nevertheless, because some consumers *may* have been misled in a material way by the Defendants' misrepresentations, the Plaintiff's Complaint only as to Defendants Dirtcheapcig.com, Fred Teutenberg IV, Fred Teutenberg V, Hooray's, Stephen K. Knopp, Hemi Group, and Kai Gachupin meets this first element.

■ The Court now turns its attention to the injury element required under GBL § 349(h). The Second Circuit in *Maurizio*, 230 F.3d 518, 522, said that for a GBL § 349 claim to prevail, "the gravamen of the complaint must be consumer injury or harm to the public interest" (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y.1988)). Even claims brought by a commercial claimant, not a consumer,

**20.** Defendants Hemi Group and Kai Gachupin's CigaretteSpecials.com's website says that "All sales are tax free!" and their buydiscountcigarettes.com has a flashing banner that says, "No tobacco tax." (Am. Compl.¶ 53.)

**21.** According to the Amended Complaint, the following Defendants made statements on their websites that they do not file Jenkins Act reports: Richard Urrea, Daniel R. Urrea and Cyco.net (on Cycocigs.com and aabakismokes.com); Hemi Group and Kai Gachupin (on Adobecigarettes.com, FreeCigs4u.com, BuyDiscountCigarettes.com and CigaretteSpecials.com); Dirtcheapcig.com, Fred Teutenberg IV and Fred Teutenberg V (on dirtcheapcig.com); Michael E. Smith (on paylesscigs.com); Hooray's, Stephen F. Knopp, and Dmitriy Zilberman (on smokes-di-

rect.com and cigsonline.com); and S4L Inc. and William C. Baker III (on s4l.com). (Am. Compl.¶ 53.)

**22.** According to the Amended Complaint, the following Defendants made statements on their websites that they do not have to file Jenkins Act reports: Dirtcheapcig.com, Fred Teutenberg IV and Fred Teutenberg V (on dirtcheapcig.com); Hooray's and Stephen K. Knopp (on smokes-direct.com and cigsonline.com); and Hemi Group and Kai Gachupin (on CigaretteSpecials.com, buydiscountcigarettes.com and FreeCigs4u.com). (Am. Compl.¶ 53.)

**23.** See discussion infra (section II(E)(1)(a)), and quote from Exhibit B regarding consumers' knowledge about the "advantage" of purchasing cigarettes online.

must allege harm to the public interest. *See, e.g., Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 277 F. Supp 2d 269, 273 (S.D.N.Y.2003); *La Cibeles, Inc. v. Adipar, Ltd.,* No. 99–4129, 2000 WL 1253240, at *15, 2000 U.S. Dist. LEXIS 12676, at *49 (S.D.N.Y. Sept. 1, 2000). Here, Plaintiff has alleged only that it has been injured by its inability to collect taxes owed. (Am. Compl. at ¶ 107.) It has failed to allege a consumer injury or harm to the public interest. While not argued by Plaintiff, an argument that when a government entity is prevented from collecting taxes, all citizens are hurt, is too indirect an injury to satisfy this element. Accordingly, even for those few consumers who may have been misled by the false representations, based on Plaintiff's failure to allege sufficient consumer harm, the claim under GBL § 349 fails.

Because any attempt to cure this deficiency would be futile, Defendants' motion to dismiss is GRANTED and leave to amend is DENIED.

## 2. Common Law Fraud

The Plaintiff also has asserted a state law claim for common law fraud. The Multistate Defendants argue that because the City has not established a misrepresentation or omission "to it," it does not state a claim for fraud. (Multistate 12(b)(6) Mem. at 15; Hemi Group Mem. at 21.) These Defendants also argue that the City has not stated a claim for common law fraud because the City is not entitled to rely upon representations or omissions to third parties. (Multistate 12(b)(6) Mem. at 17; Hemi Group Mem. at 23.) The Dirtcheap Defendants argue that Plaintiff fails to identify a misrepresentation of fact, to allege reliance, and to show that the

alleged fraud is the proximate cause of the City's injury. (Dirtcheap Mem. at 15.)

The elements of fraud under New York law are well established: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) was made for the purpose of inducing the plaintiff to rely on it, and (3) was justifiably relied upon by the plaintiff (4) who then suffered an injury as result of such reliance. *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) (citations omitted). *See also Kaufman et al. v. Cohen et al.,* 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003); *Welfare Fund v. Lollo,* 148 F.3d 194, 196 (2d Cir.1998).

Here, the City argues that the Internet tobacco companies defrauded it by not filing Jenkins Act reports with the proper New York State taxing authorities (Am.Compl.¶ 111), the acts of which were "intentional omissions to state material facts." (*Id.* at ¶ 113.) "Nondisclosure is tantamount to an affirmative misrepresentation where a party to a transaction is duty-bound to disclose certain pertinent information." [24] *Callahan v. Callahan,* 127 A.D.2d 298, 300, 514 N.Y.S.2d 819 (3d Dep't 1987). *See also Nasaba Corp. v. Harfred Realty Corp.,* 287 N.Y. 290, 293, 39 N.E.2d 243 (N.Y.1942) ("Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact."). The Court recognizes that Defendant cigarette companies are required by statute to disclose to state authorities the information found in Jenkins Act reports. However, the statute, 15 U.S.C. § 375 et seq., re-

---

**24.** However, the Court notes that this duty to disclose is most often raised in the context of a business transaction or contractual obli-

gation, which is not the case here, where the Plaintiff and Defendants do not have any relationship at all outside of this lawsuit.

quires that Jenkins Act information be provided to the State, not the Plaintiff.

Furthermore, the Defendants validly point out that the reliance element is lacking in the City's argument. "Because the Jenkins Act requires that reports be filed with the State and not the Plaintiff ... Plaintiff cannot rely on this omission as a basis for fraud." (Dirtcheap Mem. at 16.) Essentially, the Defendants argue that the Plaintiff is one step removed from the real beneficiary (the State) under the statutory obligation.

■■■ In analyzing the third element of the standard for common law fraud, that of reliance,[25] the Second Circuit in *Welfare Fund v. Lollo* focused on "whether the plaintiff must be the person to whom the misrepresentation was directed, who knew of it, and who relied upon it." 148 F.3d 194 at 196 (2d Cir.1998) (citing cases). The court concluded that a plaintiff "does not establish the reliance element of fraud for purposes of ... New York law by showing only that a third party relied on a defendant's false statement." *Id.* (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 n. 8 (S.D.N.Y.1992) ("A plaintiff has failed to state a claim for fraud when he alleges merely that the misrepresentation in question was made to or relied on by a third party."), *aff'd*, 23 F.3d 398 (2d Cir.1994); *Garelick v. Carmel*, 141 A.D.2d 501, 529 N.Y.S.2d 126, 128 (2nd Dep't 1988) (stating that in order to plead a valid fraud action, "the complaint must set forth all of the elements of fraud including the making of material representations by the defendant to the plaintiff"); *Escoett & Co. v. Alexander & Alexander, Inc.*, 31 A.D.2d 791, 296

N.Y.S.2d 929, 929 (1st Dep't 1969) (per curiam) (finding that defendant's fraud counterclaim failed because "representations to which the defendant complains were made to third parties and not to it, and those representations were relied upon those third parties and not by it")). Also relevant to the present case, the Second Circuit noted approvingly of a district court decision, *Shaw v. Rolex Watch, U.S.A.*, 673 F.Supp. 674 (S.D.N.Y.1987), where the judge differentiated between a RICO claim based on mail fraud and a claim based on common law fraud. The district court stated that, unlike a RICO causation, "New York courts have consistently held that a claim of fraud will not lie when premised on the reliance of a third party." *Lollo*, 148 F.3d at 197 (citing *Shaw*, 673 F.Supp. at 682).

■■■ Here, the Jenkins Act reports are to be filed with the State, not the City. Therefore, while the City claims it cannot enforce its tax claims against consumers without information contained in the Jenkins Act reports, those reports are to be filed with the non-party State, not the Plaintiff. Thus, it is the State that relies on Defendants' act (or nonact) of submitting the reports. Unlike a RICO cause of action, Plaintiff in a common law fraud cause of action, cannot rely on the reliance of a third party. Furthermore, because it is unclear to the Court from Plaintiff's Complaint how the City receives information from the State regarding cigarette sales transactions, this alleged reliance is further attenuated.

Accordingly, reading the Complaint in the light most favorable to the Plaintiff,

25. The Court notes that the reliance element also is required under fraudulent concealment. *See, e.g., Banque Arabe Et Internationale D'Investissement v. Maryland Nat. Bank*, 850 F.Supp. 1199, 1222 (S.D.N.Y.1994) (agreeing with the California Supreme Court that, "it is not logically impossible to prove reliance on an omission. One need only

prove that, had the omitted information been disclosed one would have been aware of it and behaved differently.") (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993)); *Congress Fin. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 472 (S.D.N.Y.1992).

Plaintiff has failed to plead the elements of common law fraud adequately in its claim. Defendants' motion to dismiss on this claim is GRANTED. Again, because amending the Complaint for this cause of action would be futile, leave to amend is DENIED.

### 3. Preemption of State Law Claims by Commerce Clause

The Hemi Group Defendants argue that the City's state law claims are preempted by the Commerce Clause. (Hemi Group Mem. at 9.) Because this Court finds that Plaintiff's state law claims fail, it need not and does not reach this question.

### 4. Preemption by Indian Commerce Clause

The Hemi Group Defendants argue that the City's state law claims are preempted by the Indian Commerce Clause.[26] (Hemi Group Mem. at 13.) Because this Court finds that Plaintiff's state law claims fail, it need not and does reach this question.

### III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' motions to dismiss for lack of personal jurisdiction; DENIES Defendants' motions to dismiss for improper venue; and DENIES Defendants' motion to transfer the action to Kentucky, Missouri, New Mexico or Virginia; GRANTS Defendants' motions to dismiss for failure to state a claim based on the RICO statute, but GRANTS Plaintiff leave to amend to replead the element of distinctness as required under RICO; GRANTS Defendants' motions to dismiss for failure to state a claim, based on GBL § 349; and GRANTS Defendants' motions

to dismiss for failure to state a claim, based on common law fraud. In accordance with this Opinion, Plaintiff may file a Second Amended Complaint within forty-five (45) days of the date of this Opinion. Within thirty (30) days of being served with the Amended Complaint, Defendants shall answer the Complaint.

SO ORDERED.

---

**26.** This argument in the Hemi Group's Memorandum to dismiss is captioned, "Plaintiff's State Law Claims Are Preempted By The Indian Commerce Clause and the Supremacy Clause," however, the Defendants do not appear to make any argument based on the Supremacy Clause, therefore, the Court does not address it.